**TONYA K., by her mother and next friend DIANE K., et al., Plaintiffs–Appellees,**

v.

**BOARD OF EDUCATION OF the CITY OF CHICAGO, et al., Defendants–Appellants.**

**Nos. 87–2360, 87–2419.**

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1988.
Decided May 16, 1988.

Debora A. Taylor, Chicago, Ill., Deborah L. Ahlstrand, Asst. Atty. Gen., Chicago, Ill., for defendants-appellants.

Ann H. Fisher, Legal Asst. Found., Chicago, Ill., for plaintiffs-appellees.

Before WOOD, Jr., COFFEY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

This class action was settled in March 1984. The district court entered a consent decree requiring the Board of Education of Chicago and the Illinois Superintendent of Education to place handicapped students in appropriate special programs promptly after their needs were diagnosed. The decree implemented the Education for All Handicapped Children Act, 20 U.S.C. §§ 1411–20 (the Act). Although the parties agreed on the appropriate relief for the children, they could not agree on compensating the children's attorneys. In March 1984 the courts of appeals were divided about the availability of attorneys' fees in cases such as this; the Supreme Court heard oral argument on March 28 in a case presenting the question. The parties therefore agreed to await the outcome of that litigation. The consent decree provides: "The issue of attorneys' fees is hereby reserved pending the decision by the United States Supreme Court of *Smith*".

On July 5, 1984, the Supreme Court held that fees were unavailable. *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). The Act did not provide for fees. Plaintiffs therefore had attempted to secure fees under 42 U.S.C. § 1988 and similar provisions in other statutes on the ground that a suit under the Act may have entailed a colorable claim under a fee-granting statute as well. *Smith* held that this two-step process is impermissible, that the Act is exclusive where it applies. *Smith* doomed the plaintiffs' request for fees in this case, and they voluntarily withdrew the motion later in July 1984.

On August 5, 1986, the President signed the Handicapped Children's Protection Act, Pub.L. 99–372, 100 Stat. 798 (the Amendment), which added among other things an express grant of authority to award attorneys' fees as part of the costs to plaintiffs prevailing under the Act. See 20 U.S.C. § 1415(e)(4)(B) (1986). Section 5 of Pub.L. 99–372 provides that the attorneys' fees provision "shall apply with respect to actions or proceedings brought under ... [the Act] after July 3, 1984, and actions or proceedings brought prior to July 4, 1984, ... which were pending on July 4, 1984." The plaintiffs promptly filed a motion under Fed.R.Civ.P. 60(b)(6), asking the district court to reinstate their request for attorneys' fees, which had been pending on July 4, 1984.

The district court granted that request. Recognizing that reopening a judgment two years after its entry is extraordinary given the parties' legitimate interests in repose, *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1204–05 (7th Cir.1984), the court believed that the Amendments are a powerful justification. Congress wanted to make fees available in cases affected by *Smith*, of which this is one. The court awarded $78,-525.61 to the plaintiffs, half to be paid by the Board of Education and half by the State of Illinois. Both have appealed, although neither challenges the amount of the award.

The state maintains that the award against it violates the eleventh amendment. Although Congress may override the states' immunity by statute, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *In re McVey Trucking, Inc.*, 812 F.2d 311, 321–23 (7th Cir.1987), only a clear declaration has such a consequence. The court must be satisfied that Congress considered the subject and decided to contract the states' immunity. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242–46, 105 S.Ct. 3142, 3147–49, 87 L.Ed.2d 171 (1985). We held in *Gary A. v. New Trier High School Dis-*

*trict,* 796 F.2d 940 (7th Cir.1986), that because the Act does not mention states and can be implemented by relief against municipalities, it does not lift states' immunity from awards of damages—though it permits prospective relief against state officials to end violations of federal law, a subject outside the scope of the eleventh amendment under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Illinois believes that *Gary A.* controls here because the new § 1415(e)(4)(B) does not mention states either, and children may be made whole by awards of fees against municipalities.

The problem with this position is that attorneys' fees do not compensate the plaintiffs for injuries. They are instead, as the statute says, part of the "costs" of prosecuting the suit. States have not had an historical immunity from awards of costs. The Supreme Court therefore held in *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), that awards of fees as part of costs do not exceed the federal courts' power under the eleventh amendment. See also, e.g., *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed. 2d 565 (1984) (when injunctive relief is available, a court may award attorneys' fees even though the defendant is absolutely immune from an award of damages). The plaintiffs named the state's Superintendent of Education, rather than the state itself, as the defendant, avoiding any problems under *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). The Superintendent does not maintain that the consent decree was unauthorized, or that a court may not issue injunctive relief

against her. It follows from *Hutto* that the court may award as part of the costs of the case the attorneys' fees reasonably incurred in obtaining that permissible, prospective relief. Damages are not authorized,[1] but fees are not damages.

■ The city and the state defendants join in two other contentions, one constitutional and the other statutory. Section 5 of the Amendments provides that the new attorneys' fees provision applies to "actions or proceedings ... pending" on July 4, 1984. By then the case had been settled and the consent decree entered; only the request for attorneys' fees remained for decision. The city and state contend that the case therefore was not "pending" on the critical date.

This is strange locution. Surely the motion was "pending"; the question rather is whether the pending motion was an "action or proceeding". One might naturally say that the "action" had been settled, but a "proceeding" (the request for fees) remained. The language of the statute supports the plaintiffs. So does its purpose. July 4, 1984, is the day before the decision in *Smith v. Robinson.* The cases preceding *Smith* conflicted, meaning that some plaintiffs in the same position as those in this case had recovered fees. The only reason for picking July 4, 1984, as the effective date of the statute was to ensure that all plaintiffs receive the awards they would have received if *Smith* had been decided the other way. The class in this case would have received fees as a matter of course if *Smith* had been decided the way the dissenting Justices urged. We therefore conclude that a "proceeding" was

---

1. One court has held in the wake of the Amendments that the Act abrogates the states' immunity even with respect to awards of damages. See *Muth v. Central Bucks School District,* 839 F.2d 113, 128–30 (3d Cir.1988). The court reasoned in part that the new authority to award fees demonstrated Congress' decision to open states' treasuries. With respect, we think this neglects *Hutto v. Finney.* The Court held that fees may be awarded against states, despite the eleventh amendment, precisely because they are not damages. The decision to authorize fees therefore hardly demonstrates the legislature's judgment that states should be amenable to damages. The Act does not mention states as de-

fendants or even authorize damages; it refers only to "such relief as the court determines is appropriate", 20 U.S.C. § 1415(e)(2). *Gary A.* fully considered the effect of this ambiguous grant of authority—one mentioning neither states nor money—and concluded that Congress had not altered the states' presumptive immunity from damages. The Congress may have contemplated the entry of injunctions against states, the point of *David D. v. Dartmouth School Comm'n,* 775 F.2d 411, 422 (1st Cir.1985), adopted in *Muth,* 839 F.2d at 129, is not authority to award damages. Nothing in the Amendments leads us to reconsider the holding of *Gary A.*

"pending" on July 4, 1984. Accord, *Capello v. District of Columbia Board of Education*, 669 F.Supp. 14 (D.D.C.1987); *Rollison v. Biggs*, 656 F.Supp. 1204 (D.Del. 1987).[2]

■ The constitutional argument is that the Amendments upset "vested" rights, thus both taking the defendants' property (the value of their judgment) and invading the province of the judicial branch. We initially questioned whether this subject is open, because despite 28 U.S.C. § 2403(a) and Fed.R.Civ.P. 24(c), each requiring the district court to notify the Attorney General whenever the constitutionality of an Act of Congress is drawn into question, no notice has been given in this case. The parties did not ask the district court to notify the Attorney General, and the court did not recognize that the statute requires it to act whether the parties ask or not. At oral argument, however, counsel for the state informed us that more than three months ago she sent a copy of the district court's opinion and the state's brief to the Attorney General. The Executive Branch therefore has actual notice of the case and has had time to exercise its right to intervene. Failure to notify the Attorney General is not a jurisdictional defect, see *Wallach v. Lieberman*, 366 F.2d 254, 257–58 (2d Cir. 1966) (U.S. Attorney General); *Kealey Pharmacy & Home Care Services, Inc. v. Walgreen Co.*, 761 F.2d 345, 350 n. 8 (7th Cir.1985) (state attorney general), and belated notice satisfies any requirement, *Merrill v. Town of Addison*, 763 F.2d 80, 83 (2d Cir.1985); Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1915 (2d ed. 1985). The rule is designed to give the Executive Branch both the time to make its views known and the opportunity to intervene in order to take a direct appeal to the Supreme Court if the decision should be adverse to the statute's constitutionality. The Attorney General has had both.

■ The "vested rights" doctrine starts from the proposition that a judgment, like a deed, is (or identifies) a species of property. It may be sold, hypothecated, or discounted like a note. Once the court has fixed property rights by judgment, the legislature has no greater power over this form of property than over any other. See *Hodges v. Snyder*, 261 U.S. 600, 43 S.Ct. 435, 67 L.Ed. 819 (1923); *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1856). This conclusion is backed up by concern to protect the autonomy of the branches of government; once a court has disposed of a case, Congress may not dictate a different decision. *United States v. O'Grady*, 89 U.S. (22 Wall.) 641, 647, 22 L.Ed. 772 (1875). Yet Congress may invite a court to reconsider even when it may not dictate the outcome, e.g., *United States v. Sioux Nation of Indians*, 448 U.S. 371, 406–07, 100 S.Ct. 2716, 2736, 65 L.Ed.2d 844 (1980), and a statute such as § 1415(e)(4)(B), which gives a court discretion to award fees but does not instruct it to do so, is only an invitation. It may create new legal rights within the courts' jurisdiction even when it may not revise judgments. The law prevailing in July 1984, stated in *Smith*, would have required the district court to deny the application for fees had it adjudicated the matter then. In civil litigation, however, no person has an absolute entitlement to the benefit of legal principles that prevailed at the time the case began, or even at the time of the bulk of the litigation. The legislature may change a statute of limitations at the last instant, extending or abrogating the remedy for an established wrong. E.g., *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). It may create a remedy years after the fact, although any earlier

2. The situation under other statutes may be different. Several courts, including ours, have held that an application for fees was not enough to count as a live case under other statutes authorizing awards of fees. E.g., *Gautreaux v. Chicago Housing Authority*, 690 F.2d 601, 604 (7th Cir.1982); *Stanwood v. Green*, 744 F.2d 714 (9th Cir.1984). Each statute has its own language and history, however, and the rule involved in those two cases, 42 U.S.C. § 1988, had neither a statutory requirement to apply the new rule retroactively nor such a pellucid reason for picking a particular effective date.

litigation would have been doomed. *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). And it may create an obligation to pay attorneys' fees for litigation that preceded the enactment of the statute. *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

The rights of the defendants in this case are no more "vested" than were the rights of the defendants in *Bradley,* who discovered a decade into extended school desegregation litigation that they would have to pay fees for the plaintiffs' work in the entire case. The entitlement of plaintiffs in proceedings under the Act was contested at the time the consent decree was entered in this case; the decree reserved rather than resolved the question. The parties agreed to wait for the outcome in *Smith* but did not specify that the outcome would fix their rights. The short-term outcome was favorable to the defendants, the longer-term outcome to the plaintiffs. The persons who decided in March 1984 to let the fees abide the event may not have contemplated that "the event" would stretch over two years, but nothing in the Constitution ensures that the resolution of legal disputes will come swiftly.

If the plaintiffs had pressed their claim in July 1984 and lost, we would have a harder problem. The plaintiffs argue that a reopening under Rule 60(b) does not interfere with vested rights because every judgment is subject to such reopening. On this view, however, there are no "rights" of any kind, and every decision fixing interests in property is forever malleable. We doubt that the Supreme Court would take that view, unless it is willing to overrule *Hodges, O'Grady,* and *Wheeling & Belmont Bridge* and jettison the doctrine. The plaintiffs did not press their claim, however; they withdrew it. There has never been a judicial disposition of the request for fees. The withdrawal in July 1984 is the equivalent of dismissing a suit without prejudice, then refiling it if the law takes a change in the plaintiff's favor. Such a refiling would not disturb vested rights or call any judicial decision into question. The reactivation of the motion for attorneys'

fees in this case has no greater effect. If the defendants wanted to have a judgment (vested or otherwise) on which to rely, they had to secure a dismissal with prejudice in 1984. They did not, and the Constitution does not give them as a gift what they failed to secure when they had the chance.

Three questions remain, all dealing with the district court's exercise of discretion. Both sets of defendants say that the court should not have granted the motion under Rule 60(b). The state defendants alone say that the district court abused its discretion by awarding fees even if it was entitled to reopen the subject; "special circumstances" counsel against the award, according to the state. The state defendants also complain about the 50–50 allocation of fees; they want the city to bear 80% of the expense.

None of these arguments is compelling. District courts have discretion in making those decisions that cannot be governed by rule. When a balance of incommensurable factors informs the decision, an appellate court's task is to ensure that the district court saw what it had to consider, disregarded what it had to disregard, and handled with care the interaction of the remaining factors. E.g., *United States v. Beasley,* 809 F.2d 1273, 1278–79 (7th Cir. 1987); *Wisconsin Real Estate Investment Trust v. Weinstein,* 781 F.2d 589, 597–98 (7th Cir.1986); *Metlyn Realty Co. v. Esmark, Inc.,* 763 F.2d 826, 831–32 (7th Cir. 1985). A reweighing would not necessarily come closer to being right (if "right" and "wrong" can be identified, apart from the procedure for resolving the dispute, when the law requires the reconciliation of competing interests), and it would consume a great deal of time of judges and lawyers. In law as in other pursuits, the division of labor has its advantages. *Anderson v. Bessemer City,* 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985); *Mucha v. King,* 792 F.2d 602, 605–06 (7th Cir.1986). Fact-bound appraisals of questions such as the allocation of fees between city and state, and the identification of special circumstances that might make an award of fees unjust, are therefore entrust-

ed to district courts, with deferential review.

The district judge thought carefully about this case, considered the circumstances that matter, and made reasoned decisions. He reopened the subject under Rule 60(b) because that was necessary to afford the plaintiffs treatment similar to that received by others who were fortunate enough to receive final judgment before *Smith.* Either the plaintiffs were going to lose their fees because their motion was resolved too late to beat *Smith* but too soon for the 1986 Amendments, or the defendants were going to lose the benefit of their window of opportunity. This was a hard choice, and the district court resolved it in a principled way. Having decided to reopen the subject, the court necessarily rejected the state's claim of "special circumstances that make an award unjust"; this line of argument just duplicates the contention that the court should not have granted the motion under Rule 60(b).[3] As for the allocation of fees: both city and state are involved in placing children who need special education and in administering the decree. The district court was entitled to conclude that they should share the costs of this litigation equally, without trying to fine-tune the apportionment. The state may well be less than 50% responsible for the decree and the problems that led up to it, but allocation of this sort is invariably approximate. This allocation is defensible; no more is required.

AFFIRMED.

---

3. On appeal the state adds the contention that the consent decree is best understood as a roll of the dice on the outcome of *Smith:* the state was willing to give the plaintiff class what it wanted on the merits because it believed that *Smith* would be resolved favorably to defendants and that this disposition would be immune from subsequent legislation to create the entitlement to fees that the state (rightly) predicted in 1984 was not yet there. The state did not present this argument to the district court or raise it in its opening brief in this court. It is too late to add an argument, which in any event does not have a sound footing in the language of the consent decree. (We need not cogitate what will happen if the state, like the plaintiffs, persuades Congress to pass a new law giving it another chance to make its argument!)