MAX M. and his parents Mr. and Mrs. M., Plaintiffs–Appellees,

v.

NEW TRIER HIGH SCHOOL DISTRICT NO. 203, Defendant–Appellant,

Illinois State Board of Education, et al., Defendants–Appellees.

No. 88–1857.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1988.

Decided Oct. 19, 1988.

As Amended Nov. 4, 1988.

John A. Relias, Vedder Price Kaufman & Kammholz, Chicago, Ill., for defendant-appellant.

Deborah L. Ahlstrand, Asst. Atty. Gen., Chicago, Ill., Matthew D. Cohen, Skokie, Ill., for plaintiffs-appellees.

Before WOOD Jr. and EASTERBROOK, Circuit Judges, and GORDON, Senior District Judge.[*]

EASTERBROOK, Circuit Judge.

This case, like *Tonya K. v. Board of Education*, 847 F.2d 1243 (7th Cir.1988), involves a claim for attorneys' fees under a retroactive law, the Handicapped Children's Protection Act of 1986, 100 Stat. 796 (the Amendments). This statute made attorneys' fees available to litigants prevailing under the Education for All Handicapped Children Act, 20 U.S.C. §§ 1411–20, if the cases were pending on July 4, 1984. See 20 U.S.C. § 1415(e)(4)(B) (1986). We held in *Tonya K.* that the Amendments apply to a case settled before July 4, 1984, in which only a request for attorneys' fees was pending on that date—and that this application is constitutional. Today's case was

---

[*] Hon. Myron L. Gordon, of the Eastern District of Wisconsin, sitting by designation.

pending on July 4, 1984, and not resolved on the merits until March 1986. See *Max M. v. Illinois State Board of Education,* 629 F.Supp. 1504 (N.D.Ill.1986), the last in a line of five substantive decisions. After the Amendments were enacted, the plaintiffs sought attorneys' fees, and the district court awarded some $25,000. 684 F.Supp. 514 (N.D.Ill.1988). The school district contends that the Amendments are inapplicable and unconstitutional, that the request for fees was untimely, and that the award is improvident. None of these contentions is persuasive.

*Tonya K.* held, 847 F.2d at 1247–48, that the Amendments do not impermissibly affect the "vested rights" of school districts. The settlement in *Tonya K.* reserved questions about fees, and the plaintiffs dismissed their claim for fees before the court could reject it. No rights, we held, became fixed, so the court avoided the "harder problem" that would arise if "the plaintiffs had pressed their claim ... and lost" (*id.* at 1248) before Congress enacted the Amendments. The school district tells us that this case presents the harder problem. Max M.'s complaint requests attorneys' fees, and he did not get them. Therefore the school district's right to be free of fees "vested" before Congress passed the Amendments.

Arguments based on "vested rights" are difficult to handle because the legal system contains rules for "vesting" that give different weights to different kinds of decisions. The dispute frequently is not so much whether Congress "takes" property by altering "vested" rights as whether entitlements were settled so firmly as to become property. A claim under a given statute, litigated to the hilt and decided on the merits, yields the strongest contention that the disposition creates rights that may not be altered (without compensation) by later legislation. A claim withdrawn because it is likely to lose under existing law creates weaker entitlements—the (non) disposition may be res judicata on the ground that omitted legal arguments concerning the same claim for relief are disposed of with arguments that have been pressed, see *Cromwell v. County of Sac,* 94 U.S. 351, 24 L.Ed. 195 (1877), but this aspect of claim preclusion is not itself "property". We suppose that a legislature could alter the doctrines of merger and bar in civil cases. A claim never made at all—because the statute that might support it had not been passed—offers the weakest argument that the court has created property rights that thwart later legislation by, disposing of existing claims according to existing rules.

■ Max M. raised in the complaint a claim for attorneys' fees. He did not press it, and the district court did not address this claim—for the sufficient reason that there was no legal basis for an award of fees until Congress passed the Amendments in August 1986. Tonya K. was in much the same position: she sought fees, but the court did not rule on the request before August 1986. To pass by a request in silence is not to put it beyond recall by subsequent legislation. Not, that is, unless doctrines of merger and bar are themselves required by the Constitution. No case of which we are aware holds that they are. Not even the Double Jeopardy Clause of the fifth amendment, the only constitutional reference to principles of preclusion, prevents litigation in separate trials of multiple claims arising out of the same circumstances. The Court has not adopted the "same transaction" approach proposed by Justice Brennan, see *Ashe v. Swenson,* 397 U.S. 436, 453–54, 90 S.Ct. 1189, 1199–1200, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring). It would be passing strange to infer, from constitutional language that is not concerned with preclusion, rules of merger and bar more stringent than those in the Double Jeopardy Clause. Max M.'s claim for fees therefore is no different in constitutional terms from Tonya K.'s: in each case the court wrapped up the litigation without addressing questions concerning fees. Stepping past an issue in silence would preclude later litigation under the ordinary principles of the common law of judgments, but the Constitution does not block Congress from altering these, to allow an initial judicial decision, when the legislature believes this to be appropriate.

■ The school district raises a second constitutional argument: that the Amendments exceed Congress's power under the Spending Clause of the Constitution. The school district devotes to this contention less than 1½ pages of its brief. Assessing the constitutionality of a statute is the most delicate task of a federal court. A litigant cannot require constitutional adjudication by incanting magic spells or pointing a finger at a particular clause. We decline to consider constitutional arguments that are offered undigested. See *Hospital Corp. of America v. FTC*, 807 F.2d 1381, 1392–93 (7th Cir.1986). The school district's brief presents eleven distinct legal issues, some with subparts. This scattershot approach is the antithesis of sound advocacy. *Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983). Such a brief sends the message that counsel does not think much of any of the claims raised—or perhaps does not believe the court able to separate good arguments from bad. Whatever the reason, the brief does not raise a serious challenge to the constitutionality of the Amendments or supply the background necessary for thoughtful consideration. More, despite 28 U.S.C. § 2403(a) and Fed. R.Civ.P. 24(c), the district court did not give notice to the Attorney General that the constitutionality of an Act of Congress had been drawn into question, and the federal government did not learn of this litigation until counsel for the school district sent a letter to the Attorney General on July 15, 1988, after the briefs on appeal had been filed, informing him that a constitutional challenge had been presented. Therefore, without suggesting anything one way or the other about the constitutionality of the Amendments, we decline the school district's invitation to address issues concerning the Spending Clause.

The lead-off issue in the school district's brief, and the one most stressed at oral argument, is the contention that the M.s' request for fees was filed too late. Rule 46 of the Local Rules of the district court gives prevailing parties 90 days after final judgment within which to seek attorneys' fees. Judgment was entered on March 20, 1986; a motion for reconsideration was denied on April 22, 1986; the request was not filed within 90 days. It was not filed, in fact, until August 1987. So it is too late, the school district contends. Since the Amendments themselves were not enacted until August 1986, it is difficult to see how claims they create could have been raised within 90 days of April 22, 1986. The district court concluded that Local Rule 46 is inapplicable because of this, and that the governing standard therefore is Fed.R.Civ. P. 54(d), which requires motions to be filed within a reasonable time. *Spray–Rite Service Corp. v. Monsanto Co.*, 684 F.2d 1226, 1248 (7th Cir.1982), affirmed on other grounds, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984).

■ The school district concedes that the M.s hardly could have been expected to seek fees by July 1986, a month before the Amendments came into force. It therefore tries to reconstruct Local Rule 46, so that the 90 days would commence on, say, the date the Amendments went into force, or the date the M.s learned of the Amendments. The district court might well have taken such an approach, cf. *Anton v. Lehpamer*, 787 F.2d 1141 (7th Cir.1986), but did not and did not have to. The rule refers to the date on which judgment was entered, not to other dates that might carry out a prompt-filing purpose. It is within the discretion of a district court to treat its local rules as establishing bright lines, to be followed to a T when they apply but disregarded when they do not. The rules are, after all, the handiwork of the district court, and adapting them to unforeseen circumstances (and deciding when the rules should break rather than bend) is properly the work of that court rather than this. We permit administrative agencies substantial leeway in construing their regulations, see *Homemakers North Shore, Inc. v. Bowen*, 832 F.2d 408, 411 (7th Cir.1987), and defer to district judges' construction of state law, see *Small v. Sheba Investors, Inc.*, 811 F.2d 1163 (7th Cir.1987). Those with the power to promulgate or amend a rule freely generally have the authority to construe it, for construction is part of the process of making the policy. So we are reluctant to upset a district court's decision

to declare that its local rule is inapplicable to a case that plainly falls outside the rule's language, and to turn elsewhere for governing principles. See *Congregation of the Passion v. Touche, Ross & Co.*, 854 F.2d 219, 223 (7th Cir.1988) (remarking on the discretion district courts possess in interpreting their own rules); see also *Smith v. Bowen*, 815 F.2d 1152 (7th Cir.1987) (holding that Local Rule 46 does not apply to requests for attorneys' fees under a social security statute when the entitlement to fees may not finally be determined until more than 90 days after judgment); cf. *Martinez v. United Auto Workers*, 772 F.2d 348, 352–53 (7th Cir.1985).

■ Whether a full year after the effective date of the Amendments is a "reasonable" time before seeking fees is a question about which reasonable persons could disagree. Most of the delay was caused by higgling between the M.s' lawyer and his former partner about the division of any fees. The partners had not expected a reward when they took the case; the opportunity to collect, after the partnership had dissolved, created difficult problems of bargaining. The M.s' lawyer did not want to spend a lot of time pursuing a request for fees when he would have to do all the work himself, work that might come to nothing, yet his ex-partner might lay claim to some of the award if he should prevail. (Perhaps counsel foresaw that the school district would fight tooth and nail. Its dogged opposition to the demand for fees surely has cost more than the $25,000 the court awarded.) The district judge believed that the ex-partners worked out their problems within a reasonable time. Yet none of this was the school district's fault, and it is hard to see why the defendant should cool its heels because the plaintiffs' lawyer has problems of his own. The question before us is not, however, whether we would have permitted the belated motion; it is whether the district court abused its discretion in entertaining the motion. It did not. The school district knew (from a demand letter in November 1986) that it would need to respond to a request under the Amendments. The delay between the end of the case (April 1986) and the request for fees (August 1987) was less than the delay in *Tonya K.* (which exceeded two years). The school district has disclaimed any argument that events during the delay undermined its ability to defend against the request. The school district does contend that having to pay fees is prejudicial, because school districts operate on budgets, but this source of "prejudice" comes from losing, rather than from losing in 1988 rather than 1987 or 1986. The principal case establishing the propriety of retroactive attorneys' fees statutes involved a school district, and compensation for work done 28 months before the statute. *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). The need to redraw the budget is neither "prejudice" from delay nor a "special circumstance" making an award inappropriate. The absence of prejudice is sufficient to establish that the district court did not abuse its discretion. *Cruz v. Hauck*, 762 F.2d 1230, 1237–38 (5th Cir.1985). As for the school district's argument that it would have appealed the judgment on the merits if only it had known it was going to be socked with attorneys' fees: even under Local Rule 46, the M.s had 90 days to seek fees, while the school district had only 30 days to take an appeal. Perhaps the time provided by Local Rule 46 should be shortened to facilitate intelligent decisions about appeals, but given the rule, the school district hasn't a leg to stand on.

■ The school district's brief is larded with other make-weight arguments. None of the remaining contentions requires discussion, given *Ustrak v. Fairman*, 851 F.2d 983 (7th Cir.1988), which holds that the recovery of $1,001 made the plaintiff a "prevailing party" and permitted the district court to award more than $20,000 in legal fees. See also *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). Max M. recovered more than $8,000 in cash, and the district court believed that the precedential effect of its rulings produced significant intangible benefits for other handicapped children. The court reduced the fee request by 50% to reflect the M.s' lack of success on other

issues. This approach was reasoned and not by any stretch an abuse of discretion. We trust that when the M.s' lawyer approaches the district court with a request for compensation for the time needed to defend the award of legal fees in this appeal—compensation to which counsel is entitled, see *Ustrak,* 851 F.2d at 990—the school district's response will be more reasonable than the yield-no-quarter strategy pursued in this court.

AFFIRMED.