Alan M. GOLD and Alan M. Gold Development Company, Plaintiffs–Appellants,

v.

Alan B. WOLPERT, et al., Defendants–Appellees.

No. 88–1977.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 6, 1989.

Decided June 9, 1989.

Stuart D. Perlman, Chicago, Ill., for plaintiffs-appellants.

Jerry D. Sparks, Gerald A. Goldman, Goldman & Marcus, Arthur R. Ehrlich, Barry T. McNamara, D'Ancona & Pflaum, Lawrence J. Moss, James A. Shapiro, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.

MANION, Circuit Judge.

Plaintiffs-appellants, Alan M. Gold and Alan M. Gold Development Co. (collectively "Gold") appeal the district court's decision to dismiss their amended complaint with prejudice. For the reasons stated below, we affirm.

## I.

Gold, a real estate broker, brought suit against several defendants to recover commissions allegedly owed him. As did the parties and the district court, we classify these defendants as sellers or purchasers. In the amended complaint,[1] the purchaser defendants included Alan B. Wolpert, Wolpert Associates, Inc., Forcap Sigma Corp., Old Country Management Corp., Wolpert Associates of Texas, Inc., Aldame Corp., Forcap Delta Corp., Forcap Alpha Corp., Interfunding Beta Group, Inc., Benton As-

---

1. Gold's initial complaint, a seven-count action for brokerage commissions, included a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim as well as a claim under the Illinois Consumer Fraud and Deceptive Practices Act. It was dismissed for failing to state a claim. Undaunted, Gold reloaded and fired off an amended complaint which abandoned the RICO and Illinois Consumer Fraud and Deceptive Practices Act claims in favor of claims for *quantum meruit,* an estoppel-based theory, tortious interference with contract, and conspiracy (he does not press the conspiracy claim on appeal).

sociates, Mansfield Associates, Louinn Associates, and Tennington Associates (collectively "Wolpert"). Seller defendants included Troy Parnell, Jim Gault (now deceased), Parnell/Gault Partnerships, Parnell Enterprises, Inc., Wicklow Corp., Wilkins–Parnell Partnership, David Wilkins, DeSoto Joint Venture, Parnell Group, Inc., Western Inns Management, Inc., Western Inns Management Corp., and Western Inns, Inc. (collectively "Parnell").[2] (The amended complaint refers to these last three defendants as "Western ..." while Wolpert refers to them as "Weston....")

Because we review a motion to dismiss, we assume the truth of all well-pleaded allegations and affirm dismissal only if Gold failed to allege any set of facts upon which relief could be granted. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The dispute in this case concerns the purchase and sale of five parcels of land located in Arkansas, Louisiana and Tennessee. Gold is *not* a licensed broker in any of those states (nor is he licensed in New York, which also has a connection to this case). In March 1981 Gold, while in Illinois, spoke by telephone to Parnell (the individual) in Texas and/or Arkansas (the either/or phrasing regarding Texas and Arkansas is necessary due to Gold's own equivocal allegations). Parnell retained Gold to find and locate potential purchasers for the five parcels of land. Soon after, Gold (while in Illinois), apparently through a telephone conference call, introduced Wolpert (who was in New York) to Parnell (who was in Arkansas and/or Texas).

In May 1981, Parnell met with Gold in Illinois to encourage Gold to introduce Wolpert and other potential purchasers to Parnell. Some time later, Parnell and Wolpert, without Gold's assistance, negotiated for the purchase of the five properties at issue. Wolpert eventually purchased the five parcels from Parnell. Gold received no commission or fee as a result of those purchases.

Gold's nine-count amended complaint sought to recover, one way or another, brokerage fees and/or commissions for the sales of the five properties. The district court referred the case to a magistrate who recommended that the amended complaint be dismissed with prejudice. Gold filed objections to the report and recommendation.

The district court adopted the magistrate's report and recommendation. Finding that the laws of Arkansas, Louisiana, New York or Tennessee would apply, the district court rejected Gold's claim because each of those states had so-called closed-door statutes which prohibit unlicensed brokers (like Gold) from maintaining an action to recover brokerage fees or commissions. The court also dismissed Gold's other claims for relief (see *supra* n. 1) and summarily rejected his motion to reconsider.

## II.

The outcome of this case depends on which state's law applies. This is because Arkansas, Louisiana, Tennessee, and New York (the states whose laws conceivably might apply) prohibit an unlicensed broker such as Gold from maintaining such an action. *See* Ark.Code Ann. § 17–35–301(d) (Michie 1987); La.Rev.Stat.Ann. § 37:1445 (West 1988); N.Y. Real Prop. § 442–d (McKinney 1968); Tenn.Code Ann. § 62–13–105 (Michie 1986).

In a diversity action, federal courts must follow the forum's—Illinois—choice-of-law rules. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Real estate brokerage contracts are interpreted according to contract law principles. *Coldwell Banker & Co. v. Karlock,* 686 F.2d 596, 599 (7th Cir.1982). We have determined that, in choice-of-law disputes involving contracts, Illinois courts would apply the law of the jurisdiction with the most signif-

---

**2.** This case invoked the federal courts' diversity jurisdiction under 28 U.S.C. § 1332. Gold sued several partnerships, but failed to allege each partner's citizenship and residence. This potentially fatal defect, *Stockman v. LaCroix,* 790

F.2d 584, 586–87 (7th Cir.1986), escaped the notice of all parties and the district courts. At this court's direction, the defect was cured by an affidavit supplying the missing information. *Id.*

icant contacts. *See, e.g., Palmer v. Beverly Enterprises,* 823 F.2d 1105, 1107 (7th Cir.1987).[3] Contacts to be considered include the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicile, residence, place of incorporation, and business of the parties. *Id.* at 1109–10 (quoting *Champagnie v. W.E. O'Neil Construction Co.,* 77 Ill.App.3d 136, 144–46, 32 Ill.Dec. 609, 615–16, 395 N.E.2d 990, 996–97 (1st Dist.1979)) (following *Restatement (Second) Conflict of Laws* § 188(2) (1971)). In finder's fee cases specifically, where both the place of contracting and the place of performance arguably occurred in several states, some courts have identified the most significant contacts as: (1) the location of the acquired company (here, property); (2) the state where the closing or acquisition occurred; (3) the state where the benefits accrue; and (4) the state where the offer to perform the finder's services was sent. *Zlotnick v. MacArthur,* 550 F.Supp. 371, 374 (N.D.Ill. 1982); *Ehrman v. Cook Electric Co.,* 468 F.Supp. 98, 99–101 (N.D.Ill.1979), *aff'd in relevant part,* 630 F.2d 529, 530 n. 1 (7th Cir.1980) (per curiam).

The place of contracting is where the last act necessary, under the forum's (Illinois') rules of offer and acceptance, occurred to give the contract binding effect. *Restatement (Second) Conflict of Laws* § 188, comment e. In Illinois this is where the offer was accepted. *Illinois Tool Works v. Sierracin Corp.,* 134 Ill.App.3d 63, 89 Ill. Dec. 40, 45, 479 N.E.2d 1046, 1051 (1st Dist.1985); *see also Johnston v. Industrial Comm'n,* 352 Ill. 74, 185 N.E. 191, 192 (1933). Gold alleged that Parnell accepted his offer while in Arkansas and/or Texas.

The negotiations occurred in several states, thus this factor is of little use. *Restatement (Second) Conflict of Laws* § 188, comment e. Place of performance likewise yields no clear result. Gold's performance included gathering information on the five properties, locating a potential purchaser, and introducing the would-be purchaser to Parnell. From the amended complaint, it appears these activities took place in several states. Gold learned of the properties from Parnell while Gold was in Illinois and Parnell was in Arkansas and/or Texas. Gold, presumably while in Illinois, located Wolpert, who was in New York. Finally, the introduction took place in Illinois, New York, and Arkansas and/or Texas, where Gold, Wolpert and Parnell all were. This factor favors no particular state because the place of performance was spread over several states. *Id.* The Arkansas, Louisiana, and Tennessee properties were the subject matter of the alleged brokerage contract. Each of these states has a policy, as reflected by their respective closed-door statutes, to protect local sellers of real estate from unconscionable brokerage practices. *See* A. Ehrenzweig, *The Real Estate Broker and the Conflict of Laws,* 59 Colum.L.Rev. 303, 305 (1959). This factor leans toward one of those states, and certainly disfavors Illinois. *Cf. Palmer,* 823 F.2d at 1110. Finally, we consider the parties' location. Gold resided in Illinois. Parnell (the individual) was either a citizen of Texas or Arkansas.[4] The remaining seller defendants either resided or were incorporated in Arkansas or Texas. Wolpert (the individual) and the other purchaser defendants either resided or were incorporated in New York, Texas, or Delaware.

---

**3.** Our role in predicting the choice-of-law rules which Illinois courts would apply is discussed in *Palmer,* 823 F.2d at 1113–14 (Easterbrook, J., concurring).

**4.** The amended complaint alleges that Parnell is a citizen of Arkansas. Gold's supplemental affidavit and stipulation (see *supra,* n. 2), however, now says that Parnell is a citizen of Texas. Gold fails to mention that he is changing his earlier allegation, and he offers no explanation whatever. For his part, Parnell now agrees that he is a Texas citizen, according to his "revised supplemental jurisdictional statement" (both his original jurisdictional statement and initial supplemental jurisdictional statement were inadequate). And Wolpert ignores (overlooks?) the apparent switch in Parnell's citizenship, even though he relied on Parnell's alleged Arkansas citizenship in his appellate brief when making his choice-of-law argument. All of this is most disturbing given the problems the parties had in the first place in establishing subject matter jurisdiction (see *supra* n. 2). We trust more attention will be paid to these kinds of details in the future.

■ The only clear, undiminished contact with Illinois is Gold's residence. That alone, however, does not support applying Illinois law to this dispute. On this record, the states of Arkansas, Louisiana, New York, or Tennessee have the most significant contacts, and since they all foreclose Gold's attempt to collect a commission, we need go no further.[5] (We do not decide whether Texas law may be applicable—a possibility given Parnell's new-found Texas citizenship—since Gold has only argued in favor of Illinois law; any reliance on Texas law has been waived.) Gold has failed to allege significant contacts that would support applying Illinois law, and thus has failed to state a claim upon which relief may be granted.[6]

### III.

■ Gold presents a host of alternative theories for recovery, none of which are persuasive. Gold argues, for example, that he can recover under the doctrine of *quantum meruit* even if there was no valid contract for his brokerage services. Again, we first must decide which state's

law applies. In *Overseas Development Disc Corp. v. Sangamo Construction Co., Inc.*, 686 F.2d 498 (7th Cir.1982), we observed that a *quantum meruit* claim sounds in restitution, and predicted that Illinois courts would follow the Second Restatement's most significant contacts approach. *Id.* at 510–11. *See also Restatement (Second) Conflict of Laws* § 221. As discussed above, these contacts point to Arkansas, Louisiana, New York, or Tennessee; not to Illinois. Because Gold only argued his *quantum meruit* claim under Illinois law (which doesn't apply), he has waived any claim under the laws of those states which might apply.

Next, Gold advances a claim for tortious interference with contract. He alleges (in conclusory fashion) that Wolpert wrongly induced Parnell to breach a contract between Parnell and Gold, and that Parnell wrongfully induced Wolpert to breach a contract between Wolpert and Gold. To bring such a claim in Illinois (whose law all parties assume applies), one must show, among other things, the existence of a valid and enforceable contract, and that the

5. Gold fares no better under the most significant contacts test as articulated in *Ehrman* and *Zlotnick*. First, the properties were located outside of Illinois in Arkansas, Louisiana, and Tennessee. Second, the closings were not alleged to have occurred in Illinois. Third, the states where the five properties were located all stand to realize the economic benefit from the transactions; Illinois will receive none. Finally, Gold's offer of services was made to Parnell in Arkansas and/or Texas.

6. We note that Gold raised a new argument, apparently unwittingly, as well as new factual matters for the first time in his reply brief. This he cannot do. It is well-settled that new arguments cannot be made for the first time in reply. *Shlay v. Montgomery*, 802 F.2d 918, 922 n. 2 (7th Cir.1986). This goes for new facts too. *Seglin v. Esau*, 769 F.2d 1274, 1277 n. 1 (7th Cir.1985).

In his initial brief, Gold argued that Illinois law would apply under a choice-of-law analysis. In his reply brief, though, he added cases (*Paulson v. Shapiro*, 490 F.2d 1 (7th Cir.1973); *Vandenburg Enterprises, Inc. v. Park Drive Manor Inc.*, 678 F.Supp. 515 (E.D.Pa.1987)), which turn on the substantive law of the state whose law does apply. This is a distinct argument. In the first case, the argument is that Illinois law should apply because it has the most significant

contacts. In the second (new) argument, the contention is that the substantive law of the state whose law does apply (e.g., here Arkansas) does not foreclose recovery because no "brokerage services" were performed in that state. For an explanation of the difference, *see Consul Ltd. v. Solide Enterprises, Inc.*, 802 F.2d 1143, 1150 (9th Cir.1986).

Gold's attempt to inject new facts into this case is more blatant. Wolpert in its (first) appellate brief pointed out that nowhere in Gold's amended complaint did he allege there existed a written contract for brokerage services. This is true. Gold, however, says there was a "written obligation" to pay Gold, and offers (for the first time) in support of that statement a letter. There is no good reason why this letter could not have been included with the amended complaint. We refuse to admit or consider it now.

If Circuit Rule 28(f) didn't already exist, it surely would be invented as a result of this case. Gold's reply brief raised new facts and arguments. Wolpert responded by moving to strike the new matters, but in the alternative sought leave to file a surreply brief. Gold in turn responded by filing a response to Wolpert's motion to strike and a substantive reply brief to Wolpert's surreply brief. This bears out our fear as expressed in *Seglin, supra*, that "[t]he possibilities for continued briefing become endless." *Id.* at 1277 n. 1.

defendant intentionally and maliciously induced the breach of that contract. *See, e.g., Zamouski v. Gerrard,* 1 Ill.App.3d 890, 275 N.E.2d 429, 433 (2d Dist.1971). As to the latter element, a complaint must recite specific facts supporting the claim; it cannot rest on mere conclusory allegations. *See Exchange National Bank v. Farm Bureau Life Insurance,* 108 Ill.App.3d 212, 63 Ill.Dec. 884, 886, 438 N.E.2d 1247, 1249 (3d Dist.1982).

▮ Under the laws of the states whose law would determine the validity of the alleged brokerage contract (Arkansas, Louisiana, New York, and Tennessee), no valid and enforceable contract may exist between an unlicensed broker and a seller or purchaser of real estate. This forecloses Gold's tort action. Equally fatal is Gold's complete failure to allege any specific facts regarding the unlawful inducement. Gold's pertinent allegations simply declare "[Wolpert or Parnell] intentionally and unjustifiably induced [Parnell or Wolpert] to breach [an] agreement or understanding with Plaintiffs." This falls far short of adequate pleading. *Compare id.*

To circumvent the closed-door statutes, Gold says he is a "consultant" or a "finder" and that, unlike "brokers," these persons are not precluded from maintaining a suit to collect their fees. But beyond this bare assertion, Gold makes no real argument. Instead, he merely tells us in his initial brief that "[t]here appear to be no laws in [Arkansas, Louisiana, New York, or Tennessee] that would require licensing and/or any other requirement for the enforceability of a consulting arrangement. Therefore all of the real estate licensing laws would not be applicable to consultants." To this, Gold's reply brief adds, "[t]he state laws referred to by Wolpert and Parnell ... would not prevent any claims by Gold." Such perfunctory and underdeveloped assertions hardly constitute an "argument," and will not be considered. *See, e.g., Hershinow v. Bonamarte,* 735 F.2d 264, 266 (7th Cir.1984). Nowhere does Gold address the relatively broad definitions of "broker" found in the respective closed-door statutes or cite to

even one case which supports his theory. Instead, he merely expects the court (and his opponents) to research his claims and to test his hunch that "[t]here appear to be no laws" barring "consultants" or "finders" from obtaining a recovery. We decline to do his work for him.

Likewise, Gold's estoppel-based claim cites no supporting authority. In any event, the facts belie this claim. Gold contends that he and the appellees engaged in a *previous* transaction involving Oklahoma property for which he received compensation. This, Gold urges, created a binding "course of conduct" to govern all future transactions between the parties. Gold says he relied on this "course of conduct" in entering into the deals regarding the five properties at issue. His amended complaint, however, does not bear this out.

First of all, the Oklahoma transaction was closer to an isolated incident than a "course of conduct." Second, there seems to be no "reliance" on this "course of conduct" for future action. A fair reading of the amended complaint shows that (1) in March 1981 Parnell hired Gold to find purchasers for the five properties as well as the Oklahoma property, and "[a]t or about such times" Gold introduced Wolpert to Parnell (amended complaint ¶¶ 33, 34) (at this point, it would appear Gold's job was complete); (2) Wolpert offered to purchase some of the Louisiana property and agreed to purchase the Oklahoma property in May 1981 (amended complaint ¶¶ 35, 36); and (3) "[a]t or about [May 1981]," Gold discussed with Parnell and Wolpert the possible acquisition of other properties, including those properties at issue here (amended complaint ¶ 37). If anything, these allegations show that the transactions for the Oklahoma property and the other properties all occurred at roughly the same time (this is as precise as we can be given Gold's own lack of specificity). This undermines his assertion on appeal that the Oklahoma deal "set a pattern of how the parties were going to act" in the future and that Wolpert and Parnell "lulled [Gold] into believing that this was the way they would continue to act...." Gold had already acted and the alleged "course of conduct" had

nothing to do with his willingness to perform brokerage services regarding the five properties.

Finally, there is Gold's claim that, in the event the closed-door laws of the other states do apply, and thus preclude him from maintaining an action to recover his brokerage commissions, those laws violate the privileges and immunities clause of the Constitution. U.S. Const. art. IV, § 2. Once again, Gold has failed to present an argument to support his bold claim. Rather, he devotes a mere two pages to his contention while never attempting to show how the closed-door statutes discriminate against nonresidents. *Compare Toomer v. Witsell,* 334 U.S. 385, 395–96, 68 S.Ct. 1156, 1161–62, 92 L.Ed. 1460 (1948). Moreover, Gold omits any mention of the fact that each statute which he attacks contains a provision expressly allowing nonresidents the opportunity to obtain licenses. *See* Ark.Code Ann. § 17–35–103; La.Rev.Stat. Ann. § 37:1437 E; N.Y. Real Prop. § 442–g; Tenn.Code Ann. § 62–13–314. If this weren't troubling enough, Gold compounds the problem by blithely concluding in his reply brief that the four statutes "would probably contravene ... the Commerce clause" too. We decline to entertain Gold's asserted but unanalyzed and undeveloped claims. *See Max M. v. New Trier High School District No. 203,* 859 F.2d 1297, 1300 (7th Cir.1988); *Hershinow,* 735 F.2d at 266; *Carducci v. Regan,* 714 F.2d 171, 177 (D.C.Cir.1983).

## IV.

All parties requested fees and costs. (Gold's request is utterly meritless and doesn't warrant any discussion, except to caution his attorney that a frivolous request for sanctions is itself sanctionable. *Foy v. First National Bank of Elkhart,* 868 F.2d 251, 258 (7th Cir.1989).) But no one (except Parnell) cited a single case or rule, let alone provided a reason as to why fees and costs would be appropriate. (Of course, we can order sanctions *sua sponte* if warranted. *Weinstein v. University of Illinois,* 811 F.2d 1091, 1098 (7th Cir.1987).) We simply note the absence of any argument here because the lack of argument has plagued this case.

Sanctions are appropriate if the arguments on appeal are "frivolous on an objective standard." *Bailey v. Bicknell Minerals, Inc.,* 819 F.2d 690, 693 (7th Cir. 1987). Gold used the "scattershot" approach on appeal, asserting several claims often without any argument or analysis. *Max M. v. New Trier High School,* 859 F.2d at 1300. Three claims (consultant/finder, estoppel, and constitutional) were raised without any apparent thought, analysis, or research. This was not harmless. It forced his opponents to research the issues and argue against the (unarticulated) positions.

Gold had an opportunity to respond to Parnell's and Wolpert's request for sanctions and to show that his appellate arguments have substance or that an award of fees and costs would be inappropriate for some other reason. *Bailey,* 819 F.2d 693. For whatever reason, he did not. Gold has consumed the time and resources of not only his opponents who were forced to respond to Gold's barely articulated and frivolous claims, but of this court, leaving less time for other litigants whose claims belong here. *Id.; Weinstein,* 811 F.2d at 1098. Wolpert and Parnell are entitled to their fees and costs (payable by Gold's attorney) reasonably incurred for the time necessary to reply to Gold's consultant/finder, estoppel, and constitutional arguments. They have 15 days to file an appropriate statement with the clerk of this court.

AFFIRMED.