Larry D. JOHNSTON; Lawrence G. Lyon; H. Rodgers Company, Plaintiffs–Appellants,

v.

CIGNA CORPORATION; Inc. Cigna Securities; Cigna Holdings, Inc.; M. Doak Jacoway; Cigna Individual Financial Services Company; Cigna Financial Partners, Inc., a Delaware Corporation, Defendants–Appellees,

United States of America, Intervenor,

Securities and Exchange Commission, Amicus Curiae.

No. 92–1186.

United States Court of Appeals, Tenth Circuit.

Dec. 7, 1993.

Rehearing Denied Feb. 1, 1994.

Holloway, Circuit Judge, filed dissenting opinion.

Alan C. Friedberg, Martha C. Reps of Pendleton & Sabian, P.C., Denver, CO, for plaintiffs-appellants.

Theodore J. Boutrous, Jr. of Gibson, Dunn & Crutcher, Washington, DC (Theodore B. Olson, Stephen R. McAllister, John K. Bush of Gibson, Dunn & Crutcher, Washington, DC, David G. Palmer, Thomas M. Piccone of Gibson, Dunn & Crutcher, Denver, CO, with him on the brief), for defendants-appellees.

Mark B. Stern, Atty., Civ. Div., Dept. of Justice, Washington, DC (Michael J. Norton, U.S. Atty., Denver, CO, Stuart E. Schiffer, Acting Asst. Atty. Gen., Stuart M. Gerson, Asst. Atty. Gen., Barbara C. Biddle, Atty., Civ. Div., Dept. of Justice, Washington, DC, with him on the brief), for intervenor.

Paul Gonson, Sol., Jacob H. Stillman, Associate Gen. Counsel, Leslie E. Smith, Senior Sp. Counsel, S.E.C., Washington, DC, for amicus curiae.

Before BALDOCK, HOLLOWAY, and KELLY, Circuit Judges.

BALDOCK, Circuit Judge.

Plaintiffs appeal the district court's denial of their motion for reconsideration of their motion for reinstatement of claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and their alternative motion for relief from judgment, Fed. R.Civ.P. 60(b)(6). The district court denied Plaintiffs' motion for reconsideration, reaffirming its earlier determination that Defendants were entitled to summary judgment because Section 27A of the Securities Exchange Act of 1934, § 476 of the Federal Deposit Insurance Corporation Improvement Act of 1991, 15 U.S.C. § 78aa–1, is unconstitutional.[1] We have jurisdiction under 28 U.S.C. § 1291.

Plaintiffs filed suit on January 30, 1990 alleging that Defendants violated Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5, 17 C.F.R. § 240.10b–5, and various Colorado securities laws in connection with Plaintiffs' purchases of certain interests in real estate limited partnerships in 1983 and 1987. Plaintiffs also asserted state law claims for breach of fiduciary duty and negligence. On January 9, 1991, the district court granted Defendants' motion to dismiss Plaintiffs' state law claims. Borrowing the applicable limitations period from Colorado law, however, the court denied Defendants' motion to dismiss Plaintiffs' section 10(b) claims as time barred.

On June 20, 1991, the Supreme Court announced its decisions in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), and *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). In *Lampf,* the Court rejected the practice of borrowing state statutes of limitation for private causes of action under section 10(b). —— U.S. at ——, 111 S.Ct. at 2781–82. The Court held that such actions must be commenced within one year after discovery of the facts constituting the violation and within three years after the violation occurred. *Id.* The *Lampf* Court applied this new rule retroactively to the parties before it and dismissed the plaintiffs' action as time barred. *Id.* On the same day, the Court decided *Beam,* in which the majority held that when it applies a new rule to the litigants in a particular case, that rule

---

1. Because the constitutionality of section 27A is at issue, the United States intervened as a matter of right, 28 U.S.C. § 2403(a).

must also be applied to all other pending civil suits. ——— U.S. at ———, 111 S.Ct. at 2441.

Relying on *Lampf* and *Beam*, Defendants moved for summary judgment on September 6, 1991, on the ground that Plaintiffs' section 10(b) claims were time barred. The district court agreed that Plaintiffs' action was not timely under the rule of *Lampf* and granted Defendants' motion on October 10, 1991. Plaintiffs did not appeal this determination.

Approximately two months after judgment was entered against Plaintiffs, and after Plaintiffs' time in which to file a notice of appeal had expired, Congress enacted the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102–242, 105 Stat. 2387 (codified at 15 U.S.C. § 78aa–1), amending the Securities Exchange Act of 1934 by adding the following new section 27A:

(a) Effect on pending causes of action

The limitation period for any private civil action implied under section [10(b) ] of this [Act] that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

(b) Effect on dismissed causes of action

Any private civil action implied under section [10(b) ] of this [Act] that was commenced on or before June 19, 1991—

(1) which was dismissed as time barred subsequent to June 19, 1991, and

(2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991,

shall be reinstated on motion by the plaintiff not later than 60 days after Dec. 19, 1991.

15 U.S.C. § 78aa–1. Section 27A effectively overturned the *Lampf/Beam* basis upon

which the district court had granted Defendants' summary judgment motion.

On January 10, 1992, Plaintiffs filed a timely motion to reinstate their section 10(b) claims pursuant to section 27A(b). Defendants opposed the motion, contending that section 27A was unconstitutional. On March 10, 1992, while the motion for reinstatement was still pending, Plaintiffs filed a Rule 60(b) motion requesting relief from the October 10, 1991 judgment. In that motion, Plaintiffs requested that if the district court determined that section 27A could not revive their final, unappealed judgment, the court should nevertheless grant Rule 60(b) relief "to allow justice to be done and the clear intent of Congress to be vindicated."

In a Memorandum Opinion and Order dated March 20, 1992, the court denied both motions. The court denied Plaintiffs' motion to reinstate, concluding that section 27A violates the principle of separation of powers and impermissibly upsets a final judgment. The court also rejected Plaintiffs' Rule 60(b) argument as dependent on the validity of section 27A.

On April 3, 1992, Plaintiffs filed a Rule 59(e) motion for reconsideration of the denial of their motion to reinstate and their Rule 60(b) motion in light of the Supreme Court's decision in *Robertson v. Seattle Audubon Soc'y*, ——— U.S. ———, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992).[2] On May 20, 1992, the court denied the motion. Plaintiffs thereafter filed a timely notice of appeal.

■ On appeal, Plaintiffs claim (1) the district court erred in denying their motion to reinstate because section 27A represents a constitutional exercise of congressional power, and (2) the district court abused its discretion in denying their Rule 60(b) motion for relief from judgment. Defendants maintain that despite our intervening decision in *Anixter v. Home–Stake Production Co.*, 977 F.2d 1533 (10th Cir.1992), section 27A(b) is uncon-

---

**2.** Plaintiffs relied on *Robertson* to support their contention that the district court erred in concluding that section 27A is unconstitutional. In *Anixter v. Home–Stake Production Co.*, 977 F.2d 1533 (10th Cir.1992), *see infra* part I, we applied *Robertson* and concluded that section 27A is constitutional as to cases that were still before the

courts at the time section 27A was enacted. However, neither *Robertson*, nor *Anixter*, addresses the issue of whether Congress can upset a judgment that is final in that the availability of appeal is exhausted, and the time for a petition for certiorari has elapsed, or the petition has been denied.

stitutional as applied to the final, unappealed judgment in this case in that section 27A(b) violates the doctrine of vested rights and the principle of separation of powers. We review the district court's decision regarding the constitutionality of section 27A(b) de novo.[3] *See United States v. Wynne,* 993 F.2d 760, 764 (10th Cir.1993).

## I.

In *Anixter v. Home–Stake Production Co.,* 977 F.2d 1533, 1542 (10th Cir.1992), we held that section 27A did not violate the principle of separation of powers because "Congress properly exercised its legislative function to compel a change in the law." Applying *United States v. Klein,* 80 U.S. 128, 20 L.Ed. 519 (1871), and *Robertson v. Seattle Audubon Soc'y,* —— U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992), we concluded that section 27A was a constitutional exercise of congressional power because:

> Section 27A does not direct courts to make specific factual findings or mandate a result in a particular case. (citation omitted). It does not remove or alter the courts' constitutional adjudicatory function. Instead, in section 27A Congress prescribed a new statute of limitations for the judiciary to apply to all section 10(b) litigation *pending* on June 19, 1991.

*Anixter,* 977 F.2d at 1545 (emphasis added). All but one of our sister circuits that have addressed the issue have concluded that section 27A, as it applies to cases still before the courts, establishes a valid change in the law. *See Axel Johnson v. Arthur Andersen & Co.,* 6 F.3d 78 (2d Cir.1993); *Cooke v. Manufac-*

*tured Homes, Inc.,* 998 F.2d 1256 (4th Cir. 1993); *Pacific Mut. Life Ins. Co. v. First Republicbank Corp.,* 997 F.2d 39 (5th Cir. 1993); *Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.,* 993 F.2d 269 (1st Cir.1993); *Berning v. A.G. Edwards & Sons, Inc.,* 990 F.2d 272 (7th Cir.1993); *Gray v. First Winthrop Corp.,* 989 F.2d 1564 (9th Cir.1993); *Henderson v. Scientific–Atlanta, Inc.,* 971 F.2d 1567 (11th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *but see Plaut v. Spendthrift Farm, Inc.,* 1 F.3d 1487 (6th Cir.1993) ("we strongly disagree with the rationale behind these decisions [upholding the constitutionality of section 27A as a valid change in the law]").

In *Anixter,* as distinct from the instant case, the plaintiffs' petition for certiorari was before the Supreme Court at the time section 27A was enacted.[4] *Id.* at 1542. As a result, we had no occasion in *Anixter* to address the constitutionality of section 27A(b) to the extent it directs courts to reinstate claims that were no longer before the courts. Section 27A(b) specifically addresses cases which have been dismissed as time barred and directs that these cases be reinstated. Section 27A(b) makes no distinction between a dismissed case in which an appeal or a petition for certiorari was before the courts at the time of enactment, and a dismissed case which had completed its journey through the courts at the time section 27A was enacted. Thus, section 27A(b) purports, in part, to reopen cases in which courts have rendered final and nonappealable[5] judgments prior to its enactment. Only two cir-

---

**3.** Defendants do not dispute that Plaintiffs section 10(b) claims arising out of the 1989 transactions meet the criteria of section 27A(b), and therefore would be restorable if section 27A(b) is constitutional. As a result, the constitutional issue is unavoidable. *See Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2996–97, 86 L.Ed.2d 664 (1985) (we do not decide constitutional issues unnecessarily). Given our conclusion with respect to the constitutionality of section 27A(b), we need not address Defendants' argument that Plaintiffs' section 10(b) claims arising out of the 1983 transactions fail to meet the requirements of section 27A(b).

**4.** For purposes of retroactive legislation, a case is final only after the availability of appeal is ex-

hausted, and the time for a petition for certiorari has elapsed or the petition has been denied. *See Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 712 n. 6, 93 L.Ed.2d 649 (1987); *Gray,* 989 F.2d at 1571; *Plaut,* 1 F.3d at 1500 (Keith, J., concurring in part and dissenting in part). Because the *Anixter* plaintiffs' petition for certiorari was before the Supreme Court at the time section 27A was enacted, the case had not completed its journey through the appellate process and was therefore not final. *See Gray,* 989 F.2d at 1571.

**5.** For purposes of this opinion, we use the term "nonappealable" to refer to cases that have completed their journeys through the courts. *See supra* note 4.

cuits to date have addressed this issue and they have reached opposite conclusions. *See Plaut,* 1 F.3d 1487 (6th Cir.1993) (holding that section 27A(b) is unconstitutional); *Pacific Mut.,* 997 F.2d 39 (5th Cir.1993) (holding that section 27A(b) does not offend the constitution). In *Pacific Mut.,* the Fifth Circuit concluded that Congress had the authority to upset final judgments because, "Congress and the judiciary share authority to decide when the judiciary's word on a controversy is its last." 997 F.2d at 55. The court further concluded that "judgments that are final and nonappealable do not create rights that are absolutely immune from congressional manipulation." *Id.* at 49.

In *Plaut,* the Sixth Circuit held that section 27A(b) was unconstitutional based on the principle of separation of powers and the vested rights doctrine. 1 F.3d 1487. The *Plaut* court, stating that "Congress may not require the federal courts to nullify or vacate their properly rendered judgments, regardless of what injustice Congress believes those judgments have visited upon private parties," 1 F.3d at 1499, concluded that section 27A(b) amounts to an unconstitutional congressional usurpation of the judicial power. Judge Keith dissented in part in *Plaut,* concluding that section 27A(b) is unconstitutional only as applied to those cases whose journey through the courts had completely come to an end at the time section 27A was enacted. *Id.* at 1500. Judge Keith would hold that section 27A(b) is valid as applied to those cases that had been dismissed but were not yet final on the date of enactment—*i.e.,* availability of appeal or certiorari not yet expired. *Id.*

In the instant case, as in *Pacific Mut.* and *Plaut,* Plaintiffs' case had reached final judgment prior to the enactment of section 27A. Plaintiffs did not appeal the district court's grant of summary judgment in favor of Defendants, and by the time Congress enacted section 27A, the time for appeal had expired. We must therefore address for the first time whether, to the extent that section 27A(b) purports to reopen final and nonappealable judgments, section 27A(b) is a constitutional exercise of Congress's legitimate powers. For the reasons discussed below, we conclude that Congress cannot, consistent with the constitution, direct a federal court to reinstate a final, nonappealable judgment pursuant to section 27A(b).

## II.

Plaintiffs contend that section 27A(b) does not violate the vested rights doctrine as applied in this case because their section 10(b) claims were never litigated on the merits. Instead, Plaintiffs' claims were dismissed as untimely based on the *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) statute of limitation, and according to Plaintiffs, statutes of limitation do not give rise to vested rights. The government argues that section 27A(b) does not violate the vested rights doctrine because given that Plaintiffs' claims were initially ruled timely, and then rendered retroactively untimely by *Lampf,* "[t]he judgment thus amounts to a retroactive windfall for the defendants, one resting not on the merits of the case but on a purely non-substantive ground." The government also argues that Defendants cannot claim a vested right in their judgment because they could not justifiably rely on the *Lampf* rule given that Congress enacted section 27A only a few months after Plaintiffs' section 10(b) claims were dismissed. Finally, the government asserts that Defendants cannot have a vested right in their final judgment because the courts have the authority to deprive them of such judgment at any time under Rule 60(b), and Defendants cannot assert a greater right against one branch of government than against another.

The nature of the vested rights doctrine is twofold. The doctrine has a due process component premised upon the acknowledgment that once rights are fixed by judgment, they are a form of property over which the legislature has no greater power than it has over any other form of property. *Axel Johnson v. Arthur Andersen & Co.,* 6 F.3d 78, 83 (2d Cir.1993); *Georgia Ass'n of Retarded Citizens v. McDaniel,* 855 F.2d 805, 810 (11th Cir.1988), *cert. denied,* 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989); *Tonya K. v. Board of Educ.,* 847 F.2d 1243, 1247–48 (7th Cir.1988); *Treiber v. Katz,* 796 F.Supp.

1054, 1059–60 (E.D.Mich.1992); *see also Taxpayers for Animas–La Plata Referendum v. Animas–La Plata Water Conservancy,* 739 F.2d 1472, 1477 (10th Cir.1984) ("the [Supreme] Court has indicated that it would not allow a legislature to interfere with an adjudicated right"). In cases involving Congress and the federal judiciary, the vested rights doctrine also has a separation of powers component which prevents Congress from sitting as a "court of errors" with the power to suspend or revise final judgments of the federal courts. *See Axel Johnson,* 6 F.3d at 83; *Plaut v. Spendthrift Farm, Inc.,* 1 F.3d 1487, 1493 (6th Cir.1993).[6]

The case perhaps most often cited for the vested rights doctrine is *McCullough v. Virginia,* 172 U.S. 102, 123–24, 19 S.Ct. 134, 142, 43 L.Ed. 382 (1898), in which the Supreme Court held that the legislature lacks the power to take away rights that have been vested by final judgment. In *McCullough,* a taxpayer obtained a final judgment for a tax refund against the State of Virginia. Prior to execution of the judgment, the Virginia legislature attempted to prevent the taxpayer from collecting his refund by repealing the legislation that had originally entitled him to it. The Supreme Court held that the legislature was prevented from doing so because:

> It is not within the power of a legislature to take away rights which have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when these actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases.

*Id.*

Although the government points out that *McCullough* represents the only occasion where the Supreme Court has invalidated legislation under the vested rights doctrine, the government does not, indeed it could not, dispute that *McCullough* remains valid law. *See also Plaut,* 1 F.3d at 1493 n. 12 (dismissing government's implication that vitality of *McCullough* is questionable). In fact, the Court has reiterated the vested rights principle underlying *McCullough* on several occasions. *See e.g., Chicago & Southern Air*

*Lines, Inc. v. Waterman Steamship Corp.,* 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948) ("[j]udgments within the powers vested in [Article Three] courts ... may not be unlawfully revised, overturned or refused faith and credit by another Department of Government"); *Hodges v. Snyder,* 261 U.S. 600, 603, 43 S.Ct. 435, 436, 67 L.Ed. 819 (1923) ("the private rights of parties which have been vested by the judgment of a court cannot be taken away by subsequent legislation, but must be thereafter enforced by the court regardless of such legislation"); *Stephens v. Cherokee Nation,* 174 U.S. 445, 478, 19 S.Ct. 722, 734, 43 L.Ed. 1041 (1899) ("it is undoubtedly true that legislatures cannot set aside the judgments of courts"); *United States v. O'Grady,* 89 U.S. (22 Wall.) 641, 647–48, 22 L.Ed. 772 (1874) (invalidating attempt by Congress to revise a final judgment entered by the Court of Claims because "where no appeal is taken to [Supreme Court], [such judgments] are, under existing laws, absolutely conclusive of the rights of the parties, unless a new trial is granted by [Claims] court"); *Pennsylvania v. Wheeling & Belmont Bridge Co.,* 59 U.S. (18 How.) 421, 431, 15 L.Ed. 435 (1855) ("[an] act of Congress cannot have the effect and operation to annul the judgment of the court already rendered or the rights determined thereby"); *Massingill v. Downs,* 48 U.S. (7 How.) 760, 768, 12 L.Ed. 903 (1849) ("no legislative act can change the rights and liabilities of parties which have been established by solemn judgment").

Plaintiffs and the government cite several cases in which, they argue, the Supreme Court has upheld legislation that disturbs final judgments and divests private litigants of the rights recognized by those judgments. We find each of these cases distinguishable.

In *Fleming v. Rhodes,* 331 U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947), the Court sustained legislation which prevented private landlords from enforcing eviction judgments obtained against private tenants. However, as distinct from the instant case, the legislation at issue in *Fleming* did not compel courts to reopen final judgments; rather, the

---

**6.** We address the separation of powers issue *infra* part III.

legislation merely directed courts to enjoin *future* proceedings by the appellant. Likewise, in *Usery v. Turner Elkhorn Mining Corp.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), the Court upheld legislation imposing liability on coal companies for past acts. Although the legislation created liability for prior acts, it did not compel an upset of a final, nonappealable judgment.[7]

Other cases cited by Plaintiffs and the government are also distinguishable. In *Campbell v. Holt,* 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885), and *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945), the Court rejected challenges to state statutes that extended statutes of limitation after such statute had barred a right of action. Neither case, however, involved a final judgment. Finally, in *Wheeling Bridge*, 59 U.S. (18 How.) 421, 15 L.Ed. 435, and *Hodges*, 261 U.S. 600, 43 S.Ct. 435, 67 L.Ed. 819 the Court upheld legislation that deprived the litigants of their vested rights in final judgments. In both cases, however, the Court did so because the rights involved were public rights—as opposed to the private rights asserted here—and a judgment declaring a public right may be annulled by subsequent legislation. *Wheeling Bridge*, 59 U.S. (18 How.) at 431, 15 L.Ed. 435; *Hodges*, 261 U.S. at 603–04, 43 S.Ct. at 436. In *Wheeling Bridge*, the Court specifically distinguished adjudications involving private rights stating, "[w]hen [private

rights] have passed into judgment the right becomes absolute, and it is the duty of the court to enforce it." 59 U.S. (18 How.) at 431, 15 L.Ed. 435.[8] Having addressed these cases, we conclude that the vested rights doctrine as described in *McCullough* remains vital.

We now address Plaintiffs' and the government's specific arguments relating to the application of the vested rights doctrine in this case. First, we hold that the fact that final judgment was rendered in favor of Defendants on the basis of a statute of limitations does not change the basic principle that Congress cannot upset the judgment through subsequent legislation. We reject Plaintiffs' argument that Defendants' judgment is not a judgment on the merits. In *Murphy v. Klein Tools, Inc.*, 935 F.2d 1127, 1128–29 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 407, 116 L.Ed.2d 355 (1991), we specifically held that a dismissal on limitations grounds is a judgment on the merits, unless the court specifies otherwise.

We similarly reject Plaintiffs' argument that Defendants have no vested right in their judgment because statutes of limitations do not give rise to vested rights. Plaintiffs' argument simply misses the point. We agree that Congress has the power to change limitations periods, and as a result, a party cannot claim a vested right to a prior limitations period. *See Plaut*, 1 F.3d at 1495, *United States v. The Schooner Peggy*, 5 U.S.

7. Plaintiffs also rely on *Freeland v. Williams*, 131 U.S. 405, 417–21, 9 S.Ct. 763, 766–69, 33 L.Ed. 193 (1889), in which the Court upheld a state constitutional amendment which prevented a private litigant from enforcing a final judgment for trespass damages. *Freeland*, however, predated *McCullough*, and therefore, to the extent, if any, that *Freeland* conflicts with *McCullough's* pronouncements, *McCullough* controls.

8. Plaintiffs and the government also cite, without analysis, *Paramino Lumber Co. v. Marshall*, 309 U.S. 370, 60 S.Ct. 600, 84 L.Ed. 814 (1940). In *Paramino*, the Supreme Court upheld a private act of Congress which authorized the reopening of an order for compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–50. In upholding the special legislation, the Court emphasized:

> This private act does not set aside a judgment, create a new right of action or direct the entry of an award. The hearing provided for is subject to the provisions of the general act for

> longshoremen's and harbor workers' compensation. It does not operate to create new obligations where none existed before. It is an act to cure a defect in administration developed in the handling of a compensable claim.

*Id.* at 378, 60 S.Ct. at 602–03. *Paramino*, as distinguished from the instant case, authorized the reopening of an administrative hearing, not a final judgment of a federal court. Furthermore, in approving the private act in *Paramino*, the Court specifically noted that the act "[did] not set aside a judgment," *id.* at 378, 60 S.Ct. at 602–03, whereas in the instant case that is exactly what section 27A(b) purports to do. Moreover, contrary to the situation in *Paramino*, where the legislation cured a defect in the administrative process, it has never been claimed here that a defect existed in the district court's grant of summary judgment in favor of Defendants. For these reasons, we conclude that *Paramino* is inapposite.

(1 Cranch) 103, 2 L.Ed. 49 (1801); *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). However, Defendants do not claim a vested right in a specific limitations period. Instead, Defendants' vested right is in the *final judgment* obtained in their favor.

We also join the court in *Plaut,* 1 F.3d 1487, in rejecting the government's argument that because the final judgment in this case rested on statute of limitations grounds, the judgment is somehow less fundamental and more vulnerable to legislative revision than a final judgment in which the true merits of the case were addressed. A decision by a federal court adjudging a claim to be time barred is a final judgment on the merits, and, once a claim is so adjudged, Congress cannot direct the court to reopen the judgment and apply a new statute of limitations. *Plaut,* 1 F.3d at 1496. As the court in *Plaut* stated:

> [w]here a federal court enters judgment in a case on the basis of a time bar, it confers upon the prevailing party a right based on the protections that the time bar provides. Applying the general principles of existing law to specific circumstances, and enforcing the rights between parties created thereby constitute the essence of the judicial power.

*Id.*

We likewise reject the government's argument that Defendants should not be able to claim a vested right in their final judgment because of the resultant "windfall" that *Lampf* bestowed on them, and because of the speed with which Congress acted in undoing *Lampf.* With regard to the alleged windfall, "Congress may not retrospectively vacate decided cases, regardless of how compelling the perceived injustice visited upon the parties by a valid exercise of the judicial power."

*Plaut,* 1 F.3d at 1498–99. Furthermore, that Congress acted quickly in enacting section 27A does not make Defendants' final judgment any less final. *Id.* at 1498 ("some final judgments are less final than others only to the extent that some pregnant women are less pregnant than others").

Finally, the only argument against the application of the vested rights doctrine in this case that gives us pause is the government's argument that Defendants cannot have a vested right in their final judgment because the courts have the authority to deprive them of such judgment at any time under Rule 60(b)(6), and Defendants cannot assert a greater right against one branch of government than against another. The government argues that because the courts may deprive a litigant of a vested right in a final judgment via Rule 60(b), Congress may enact legislation that deprives a private party of a vested right in a final judgment as long as the legislation passes rational basis review. We disagree.

The power of the courts to reopen final judgments under Rule 60(b) is narrow and subscribed. Under Rule 60(b)(1)–(5), the courts may only reopen cases for those reasons specifically enumerated, and reasons (1), (2), and (3) are limited to motions made within one year of final judgment.[9] Although Rule 60(b)(6) allows motions that are made within a reasonable time and allows relief "for any other reason justifying relief," this subsection has been narrowed by case law to apply only in extraordinary circumstances. *See infra* part IV. In other words, courts do not have unbridled discretion, under Rule 60(b), to deprive private parties of a their vested rights in final judgments. Furthermore, we note that under Rule 60(b), final judgments are subject to a case-by-case eval-

---

9. Rule 60(b) provides in pertinent part:

   On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or other misconduct of an adverse part; (4) the judgment is void; (5) the judgment has been satis-

   fied, released, or discharged, or a prior judgment upon which it is based has been reversed of otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

   Fed.R.Civ.P. 60(b).

uation by a tenured judge who is free from political pressure. The Rule 60(b) guidelines are far different from the rational basis review the government would advance for legislative action to deprive a private litigant of his or her final judgment. Given these differences, we cannot say that in this instance, claiming a vested right in a final judgment against Congress amounts to claiming a greater right against one branch of government than another. Just as Defendants have a vested right in their final judgment against any sweeping "rationally-based" power on the part of the judiciary to upset that judgment, they have the same right against Congress. Finally, although Rule 60(b) authorizes the judiciary to upset final judgments, an attempt by Congress to do so violates the principle of separation of powers. *See infra* part III.

## III.

■ Defendants contend that in section 27A(b) Congress unconstitutionally usurps the role of the judiciary by upsetting final judgments. According to Defendants, section 27A(b) impermissibly places Congress in the position of a court of last resort. Plaintiffs maintain that we have already concluded in *Anixter v. Home–Stake Production Co.,* 977 F.2d 1533 (10th Cir.1992), that section 27A represents a proper exercise of Congress's legislative authority.

The Framers of our Constitution long ago recognized that "the preservation of liberty requires that the three great departments of power should be separate and distinct." *The Federalist No. 47* (James Madison). Because the Constitution grants to Congress extraordinarily broad powers, the Framers perceived that the Legislative Branch posed a special threat to the balance of power within our system: "[i]ts constitutional powers being at once more extensive and less susceptible of precise limits, it can with the greater facility, mask under complicated and indirect measures, the encroachments which it makes on the coordinate departments." *The Federalist No. 48* (James Madison). Thus, the Constitution imposes constraints on the Congress to "forestall the danger of encroachment 'beyond the legislative sphere.'" *Metropolitan Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.,* — U.S. —, —, 111 S.Ct. 2298, 2311, 115 L.Ed.2d 236 (1991).

The Supreme Court has repeatedly "given voice to, and has reaffirmed, the central judgment of the Framers of the Constitution that, within our political scheme, the separation of governmental powers into three coordinate Branches is essential to the preservation of liberty." *Mistretta v. United States,* 488 U.S. 361, 380, 109 S.Ct. 647, 658–59, 102 L.Ed.2d 714 (1989). "As [the Court] stated in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the system of separated powers and checks and balances established in the Constitution was regarded by the Framers as 'a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other.'" *Morrison v. Olson,* 487 U.S. 654, 693, 108 S.Ct. 2597, 2620, 101 L.Ed.2d 569 (1988) (quoting *Buckley,* 424 U.S. at 122, 96 S.Ct. at 683–84). Over the years, the Supreme Court "has not hesitated to invalidate provisions of law which violate this principle." *Id.*

As recognized by the Sixth Circuit in *Plaut v. Spendthrift Farm, Inc.,* 1 F.3d 1487, 1492–93 (6th Cir.1993), the Supreme Court first spoke directly on the proper relationship between the legislature and the judiciary in *Hayburn's Case,* 2 U.S. (2 Dall.) 409 (1792). In *Hayburn's Case,* the Court addressed a congressional statute which gave the federal courts the authority to determine whether disabled veterans of the Revolutionary War were entitled to pensions, and if so, the amount of the pensions. The statute provided, however, for the Secretary of War to review the decision of the court and transmit his opinion to Congress for its approval.

Prior to the decision, Congress amended the statute to provide other relief for the veterans, and the Supreme Court dismissed the case as moot. Nevertheless, the views of the justices of the Supreme Court were noted in a footnote to the dismissal because they "involve[d] a great constitutional question." *Hayburn's Case,* 2 U.S. (2 Dall.) at 409. These views were expressed by the justices and district judges, sitting on New York, Pennsylvania, and North Carolina circuit

court panels, in their independent and unanimous refusals to execute the statute and hear the pensioners' applications. The panels refused to entertain the applications, concluding that the statutory scheme, which provided for review of federal court decisions by the Secretary of War and Congress, violated the principle of separation of powers. "This result was in essence the Court's first invalidation of an act of Congress." *Plaut*, 1 F.3d at 1492.

The justices sitting on the panel in New York stated:

> That neither the legislative nor the executive branches, can constitutionally assign to the judicial any duties, but such as are properly judicial, and to be performed in a judicial manner.
>
> That the duties assigned to the circuit, by this act, are not of that description, and that the act itself does not appear to contemplate them as such; inasmuch as it subjects the decisions of these courts, made pursuant to those duties, first to the consideration and suspension of the secretary of war, and then to the revision of the legislature; whereas, *by the constitution, neither the secretary of war, nor any other executive officer, nor even the legislature, are authorized to sit as a court of errors on the judicial acts or opinions of this court.*

*Hayburn's Case*, 2 U.S. (2 Dall.) at 410 (emphasis added). The justices sitting on the

Pennsylvania panel jointly mailed a letter to President George Washington in which they declared:

> [N]o decision of any court of the United States can, under any circumstances, in our opinion, agreeable to the constitution, be liable to a revision, or even suspension, by the legislature itself, in whom no judicial power of any kind appears to be vested, but the important one relative to impeachments.

*Id.* at 412.

The principle from *Hayburn's Case* that "[t]he federal judiciary will not have its decision in a case frustrated by having it subjected to revision, suspension, modification, or other review by the executive or legislative branches," John E. Nowak, Ronald D. Rotunda, J. Nelson Young, *Constitutional Law* 67 (3d ed. 1986), has been consistently reiterated.[10] *See also* 13 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3529.1 (1984) ("[a] judicial declaration subject to discretionary suspension by another branch of government may easily be characterized as an advisory opinion"). Indeed, excepting the Fifth Circuit's opinion in *Pacific Mut. Life Ins. Co. v. First Republicbank Corp.*, 997 F.2d 39 (5th Cir.1993), we cannot locate a single case where a court has upheld an attempt by Congress to upset a final, nonappealable judgment in a case between private parties.[11]

---

**10.** There are two exceptions to this general rule. The first is that Congress can waive the res judicata defense when a prior judgment has been entered in the government's favor on a claim against the government. *United States v. Sioux Nation of Indians*, 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980). Congress may also enact legislation that annuls a final judgment when the remedy chosen—*i.e.*, an injunctive decree rather than damages at law—directly affects public versus private rights. *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 15 L.Ed. 435; *see also supra* part II. Section 27A(b) does not fall within either of these exceptions.

**11.** We disagree with The Fifth Circuit's analysis regarding section 27A(b) and final judgments. In *Pacific Mut.*, the court relies upon *The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 and *Sioux Nation*, 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 in concluding that "the Constitution permits Congress and the judiciary to share authority in deciding when a court is

finished deciding a particular controversy between individuals." 997 F.2d at 54. Although we agree that the two branches share such authority while a case is still pending, Congress's authority to say when a controversy is over ends when the case's journey through the courts comes to an end. *See Campbell v. Holt*, 115 U.S. 620, 628, 6 S.Ct. 209, 213, 29 L.Ed. 483 (1885) (statutes of limitations "have always been held to be within the legislative power *until the bar is complete*") (emphasis added). Moreover, *The Schooner Peggy* and *Sioux Nation* fail to support the Fifth Circuit's sweeping statement. In *The Schooner Peggy*, the Court held that the treaty entered into after judgment applied because the parties had appealed the determination, making the judgment not yet final at the time the law changed. 5 U.S. (1 Cranch) 108–110, 2 L.Ed. 49. Furthermore, *Sioux Nation* merely represents one of the exceptions to the general rule that Congress may not upset final judgments. *See supra* note 10. We therefore remain convinced that under the rule of *Hayburn's Case*,

In *United States v. O'Grady,* 89 U.S. (22 Wall.) 641, 22 L.Ed. 772 (1874), the Supreme Court held that the Secretary of the Treasury could not withhold a "tax" from a claimant who had been awarded a sum of money for the net proceeds of cotton in his original suit against the United States. In the original suit in the Court of Claims, the government made no counterclaim for the tax, nor claimed any set-off. As a result, the Court concluded that the Secretary could not later withhold the tax because, "it is quite clear that Congress cannot subject the judgments of the Supreme Court to the re-examination and revision of any other tribunal or any other department of the government." *Id.* at 648. The Court went on to say that "the judgment of the Court of Claims, from which no appeal is taken, is just as conclusive." *Id.* Similarly, in *United States v. The Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801), the Court, declaring that a intervening law must be applied to a pending case, emphasized that this is true when the change in the law occurs "subsequent to the judgment, *and before the decision of the appellate court.*" *Id.* at 110, 2 L.Ed. 49 (emphasis added).

In *Daylo v. Administrator of Veterans' Affairs,* 501 F.2d 811 (1974), the D.C. Circuit took great pains to interpret a congressional statute dealing with veterans' benefits so that the statute did not seek to annul final judgments based on prior law. Although the court acknowledged that the statute could be interpreted such that Congress intended such judgments to be overturned, it avoided this construction "in light of the constitutional difficulties that this construction would pose." *Id.* at 823. Likewise, in *Georgia Ass'n of Retarded Citizens v. McDaniel,* 855 F.2d 805, 810 (11th Cir.1988), *cert. denied,* 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989), the Eleventh Circuit interpreted the attorney fees retroactivity provision of the Handicapped Children's Protection Act ("HCPA") of 1986, 20 U.S.C. § 1415(e), so that it did not apply to final, nonappealable judgments rendered prior to the date HCPA became law. In doing so, the court noted that the principle of separation of powers "protects judicial action from superior legislative review, 'a regime [that would be] obviously inconsistent with due process of law and subversive of the judicial branch of government.'" *Id.* at 810 (quoting *Daylo,* 501 F.2d at 816).[12]

*Hayburn's Case* enunciated the separation of powers principle that Congress cannot, consistent with the Constitution, upset final judgments of federal courts. This principle remains as alive today as it was when our nation was founded. In *Hayburn's Case,* Congress attempted to reserve to itself the power to revise final judgments of federal courts. *See Plaut,* 1 F.3d at 1493. Because Congress attempts, in section 27A(b), to actually exercise that same power, section 27A(b), as it applies to final, nonappealable judgments, cannot stand.

Contrary to Plaintiffs' assertion, our conclusion today is not inconsistent with our holding in *Anixter,* 977 F.2d 1533. Although we made fairly broad pronouncements in that case as to the constitutionality of section 27A, the underlying case in *Anixter* was still before the courts at the time section 27A was enacted, and our analysis in *Anixter* was confined to that precise situation. Even though, as we concluded in *Anixter,* Congress can legitimately exercise its legislative power to affect cases before the courts at the time it enacted section 27A, we hold today that, with respect to cases that were final and nonappealable at the time section 27A became law, Congress cannot do so.

## IV.

▮ Plaintiffs argue that the district court abused its discretion in denying their

section 27A(b), as applied to final, nonappealable judgments, is unconstitutional.

12. *Tonya K. v. Board of Educ.,* 847 F.2d 1243, 1247–48 (7th Cir.1988), also addressed the HCPA attorney fees retroactivity provision. The court upheld the constitutionality of the statute and affirmed the district court's grant of Rule 60(b) relief reopening the case for a determination of fees, because it interpreted the statutory provision to be a mere "invitation" by Congress to the courts to reconsider the issue. *Id.* at 1247. In so holding, the *Tonya K.* court emphasized that "once a court has disposed of a case, Congress may not dictate a different decision[;] ... [i]t may create new legal rights within the courts' jurisdiction even when it may not revise judgments." *Id.*

Rule 60(b) motion for relief from judgment. We will reverse the district court's determination "only if we find a complete absence of a reasonable basis and are certain that the district court's decision is wrong." *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1147 (10th Cir.1990).

Rule 60(b)(6) provides for relief for "any other reason justifying relief from the operation of the judgment." Relief under Rule 60(b)(6) is discretionary and is warranted only in exceptional circumstances. *Pelican,* 893 F.2d at 1147. Absent exceptional and compelling circumstances, a litigant is not entitled to relief under Rule 60(b)(6) when the litigant made an informed and intelligent decision not to appeal. *Ackermann v. United States,* 340 U.S. 193, 200, 71 S.Ct. 209, 212–13, 95 L.Ed. 207 (1950).

We have described Rule 60(b)(6) as a "grand reservoir of equitable power to do justice in a particular case." *Pierce v. Cook & Co.,* 518 F.2d 720 (10th Cir.1975) (en banc) (citation omitted), *cert. denied,* 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976). In *Pierce,* we were confronted with "[t]he kind of legal error that provides the extraordinary circumstances justifying relief under rule 60(b)(6)." *Van Skiver v. United States,* 952 F.2d 1241, 1244 (10th Cir.1991), *cert. denied,* — U.S. ——, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992). We granted Rule 60(b)(6) relief in *Pierce* based on a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs … were injured." 518 F.2d at 723.[13] Absent a post-judgment change in the law in a factually-related case, however, "we have held that 'a change in the law or in the judicial view of an established rule of law' does not justify relief under Rule 60(b)(6)." *Van Skiver,* 952 F.2d at 1245 (quoting *Collins v. City of Wichita,* 254 F.2d 837, 839 (10th Cir.1958)).

We conclude that the district court did not abuse its discretion in refusing to grant Plaintiffs' motion for relief under Rule 60(b)(6). We first note that as the Second Circuit determined in *Axel Johnson v. Arthur Andersen & Co.,* 6 F.3d at 85 (2d Cir. 1993), "motions for reinstatement under section 27A(b) should be brought under the statute itself, rather than under the discretionary mechanism of Rule 60(b)(6)." Moreover, even if a Rule 60(b)(6) motion is an appropriate means for seeking relief in this case, the fact remains that Plaintiffs failed to appeal the district court's grant of summary judgment in favor of Defendants. Plaintiffs now claim that they chose to forego an appeal because to do so would have been frivolous; however, as Defendants point out, Plaintiffs did choose to defend against the motion for summary judgment, presumably on nonfrivolous grounds. In any event, the decision not to appeal was informed and intelligent. Moreover, Plaintiffs claim for relief is premised on the change in law occasioned by section 27A, and although the result may be harsh, section 27A did not arise out of a *Pierce*-type factually-related incident, therefore the section 27A change in law does not warrant Rule 60(b)(6) relief. For these reasons, we conclude that the district court did not abuse its discretion.

### V.

In summary, we hold that section 27A(b) as it applies to the final, nonappealable judgment in this case is unconstitutional as violative of the vested rights doctrine and the principle of separation of powers. We further conclude that the district court did not abuse its discretion in denying Plaintiffs Rule 60(b)(6) relief.

AFFIRMED.

HOLLOWAY, Circuit Judge, dissenting:

I respectfully dissent. The majority opinion forcefully argues both the "vested rights"

---

13. In *Pierce,* a diversity case in which the plaintiff sued the truckdriver's employer for his negligence in causing a traffic accident, summary judgment was granted in favor of the employer. 518 F.2d at 721. Subsequently, a suit brought in state court by one of the passengers in the *Pierce* plaintiff's car—who was injured in the same accident—resulted in a change in Oklahoma law creating liability on the part of the employer for the negligence of the carrier. *Id.* at 722. Because "[t]he federal courts in which plaintiffs were forced to litigate ha[d] given them substantially different treatment than that received in state court by another injured in the same accident," *id.* at 723, we granted Rule 60(b)(6) relief.

and the separation of powers propositions in holding § 27A(b) unconstitutional. After careful consideration, I am persuaded that the arguments for upholding the statute have the better logic and support.

There are two principal attacks on § 27A that are advanced to us. First, the defendants-appellees argue that the statute would, by permitting the reopening of a final unappealed judgment, violate what they term "the constitutional vested rights doctrine," relying heavily on *McCullough v. Virginia*, 172 U.S. 102, 19 S.Ct. 134, 43 L.Ed. 382 (1898). Brief for Defendants–Appellees at 14, 16. Second, the defendants argue that § 27A also violates the separation of powers doctrine because it has no prospective effect. *Id.* at 33.[1]

## I

The argument premised on the "vested rights" theory is mainly grounded on *McCullough*. That case involved state bond coupons—contracts between the State of Virginia and the bondholders. The state had passed a law making it illegal to pay taxes using bond redemption coupons in lieu of cash, and instead required bondholders to pay their taxes normally and sue for a "refund" based on the value of their bondholdings later. McCullough did so, sued for his refund, won, and had his judgment affirmed on appeal. Later, the Virginia legislature passed retroactive legislation repealing the statute that authorized the taxpayer's particular form of suit. The Supreme Court held that it was "not within the power of a legislature to take away rights which have been once vested by a judgment." *McCullough*, 172 U.S. at 123, 19 S.Ct. at 142.

It is important to remember, however, that in *McCullough*, the Court discussed at length the contract rights that were involved. Referring to an earlier decision in *Hartman v. Greenhow*, 102 U.S. 672, 679, 26 L.Ed. 271 (1880), the Court quoted a statement that "a contract was thus consummated between the

State and the holder of the new bonds, and the holders of the coupons...." *McCullough*, 172 U.S. at 107, 19 S.Ct. at 136. Later, *McCullough* noted that while it is undoubtedly the general rule to accept a construction placed by the courts of a state on its statutes, one exception was always recognized "in reference to the matter of contracts alleged to have been impaired." *Id.* at 109, 19 S.Ct. at 136. Indeed, the contract rights discussion predominates through most of the opinion. *Id.* at 106–123, 19 S.Ct. at 135–142. This does not destroy the force of the holding of lack of power for the legislation to take away rights "which have been once vested by a judgment," but the pronouncement of the rule in the context of contract rights and an established money judgment inform our analysis and application of the *McCullough* holding.

The significance of the contract rights background is reinforced by *Lynch v. United States*, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934), where the Court held invalid under the Due Process Clause legislation depriving private individuals of rights under renewable term insurance issued under the War Risk Insurance Act. The Court recognized that mere withdrawal of consent to suit against the government on the policies would not imply repudiation. So long as the contractual obligation was recognized, Congress could direct the fulfillment of the contractual obligation without interposition of a court or an administrative tribunal. *Id.* at 582, 54 S.Ct. at 844–845. However, because the legislation involved obviously intended to abolish rights, and not remedies, it was held invalid under the Fifth Amendment prohibition against the taking of property without just compensation. *Id.* at 579, 585, 54 S.Ct. at 843, 846. In *Pacific Mutual Life Ins. v. First RepublicBank Corp.*, 997 F.2d 39, 46–47 (5th Cir.1993), *cert. pending* (Oct. 18, 1993), Judge Reavley notes that the Due Process Clause foundation for *McCullough*

---

**1.** Defendants say that they are not discussing their arguments made below similar to those rejected by this court in *Anixter v. Home–Stake Production Co.*, 977 F.2d 1533 (10th Cir.1992), *cert. denied sub nom. Dennler v. Trippet*, —— U.S. ——, 113 S.Ct. 1841, 123 L.Ed.2d 467 and *cert. denied sub nom. Thorner v. Cross*, —— U.S. ——,

113 S.Ct. 1842, 123 L.Ed.2d 467 (1993), while they respectfully disagree with *Anixter*. Defendants, however, do not abandon those arguments made below and incorporate them by reference for possible use in seeking en banc review, or in a petition for certiorari. Brief for Defendants–Appellees at 36 n. 25.

has been recognized by the Supreme Court. *E.g., Hodges v. Snyder,* 261 U.S. 600, 602–03, 43 S.Ct. 435, 436, 67 L.Ed. 819 (1923). Thus, the *McCullough* pronouncement about "vested rights" should be read as one of due process protection of a judicial determination of contract rights.

The reasoning in *Pacific Mutual, supra,* is persuasive to me for upholding § 27A, despite *McCullough* and the "vested rights" argument of defendants. *Pacific Mutual* traces the history of *McCullough* and points out significant cases which do not recognize any absolute rule on the sanctity of prior unappealed judgments, notably *Fleming v. Rhodes,* 331 U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947), and *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). In *Fleming,* landlords who sought to evict tenants under state judgments recovered in suits for the restitution of leased property following the lapse of wartime price regulations. State court judgments for eviction were entered as sought but, after a brief hiatus, Congress enacted curative legislation prohibiting the eviction of tenants and extending the price regulations. The Supreme Court reversed a federal district court ruling that the new statute violated the Fifth Amendment Due Process Clause, stating:

> So long as the Constitution authorizes the subsequently enacted legislation, the fact that its provisions limit or interfere with previously acquired rights does not condemn it. Immunity from federal regulation is not gained through forehanded contracts. Were it otherwise the paramount powers of Congress could be nullified by "prophetic discernment." *The rights acquired by judgments have no different standing.*

*Fleming,* 331 U.S. at 107, 67 S.Ct. at 1144 (emphasis added) (footnotes omitted).

The majority opinion would distinguish *Fleming* on the reasoning that the law in question did not compel the state courts to reopen final judgments, but merely directed the courts to enjoin future eviction proceedings by the appellant. This analysis is unpersuasive. The impact on the landlords is the same as if the judgments for eviction had

been formally set aside. Reliance on form over substance by the majority is unconvincing. Since the constitution authorized the subsequently enacted legislation in *Fleming* for its important purposes, there was no due process violation there, nor is there here.

The reasoning from *Fleming* and its holding were reaffirmed in *FHA v. Darlington, Inc.,* 358 U.S. 84, 91, 79 S.Ct. 141, 146, 3 L.Ed.2d 132 (1958). The Court there stated that in *Fleming* it

> was held that the landlord could be enjoined from evicting the tenants under the state judgment, as any "vested" rights by reason of the state judgment were acquired subject to the possibility of their dilution through Congress' exercise of its paramount regulatory power.

*Id.* at 91 n. 6, 79 S.Ct. at 146 n. 6. *See also Paramino Lumber Co. v. Marshall,* 309 U.S. 370, 375, 377–78, 60 S.Ct. 600, 601, 602–03, 84 L.Ed. 814 (1940) (upholding constitutionality of an Act ordering Compensation Commission to review case and issue new order, despite finality of the earlier unappealed order; no due process violation occurred since Act did not direct entry of an award).

The majority opinion here relies on the forceful decision in *Plaut v. Spendthrift Farm, Inc.,* 1 F.3d 1487 (6th Cir.1993). Nevertheless, I remain convinced that *Pacific Mutual* has the stronger reasoning and that § 27A should be upheld as the Fifth Circuit has done. In enacting § 27A to limit the retroactive impact of *Lampf* and *Beam* on investors claiming fraudulent wrongs, Congress exercised its "paramount regulatory power," *FHA v. Darlington, Inc.,* 358 U.S. at 91 n. 6, 79 S.Ct. at 146 n. 6. The Supreme Court has thus described § 27A's remedial action:

> Congress intervened by limiting the retroactive effect of our decision, and the caution in its intervention is instructive. In an approach parallel to the one it adopted for the insider trading statute, Congress did no more than direct the applicable "limitation period for any private civil action implied under section 78j(b) of this title [§ 10(b) of the 1934 Act] that was commenced on or before June 19, 1991 [the

day prior to issuance of *Lampf, Pleva* ]." 15 U.S.C. § 78aa–1 (Supp. III).

*Musick, Peeler & Garrett v. Employers Ins. of Wausau,* —— U.S. ——, ——, 113 S.Ct. 2085, 2089, 124 L.Ed.2d 194 (1993).

Congress thus protected from the severity of *Lampf* and *Beam* the large number of pending claims of securities fraud which would otherwise be barred. In doing so, no contract rights merged into a judgment were upset as in *McCullough.* The remedial statute instead merely provided for reopening of dismissals grounded on limitations, not on the lack of merit of the claims made under § 10(b) and Rule 10b–5. This is a proper regulatory function, in my judgment. The Supreme Court has "emphasized that the private enforcement of the Securities laws as a supplement to SEC action, was highly desirable." *Grace v. Ludwig,* 484 F.2d 1262, 1267 (2d Cir.1973), *cert. denied,* 416 U.S. 905, 94 S.Ct. 1610, 40 L.Ed.2d 110 (1974) (citing *J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964)); *see also Wechsler v. Southeastern Properties, Inc.,* 506 F.2d 631, 635 (2d Cir.1974). The Supreme Court has noted that private litigants "act not only on their own behalf but also 'as private attorneys general in vindicating a policy that Congress considered to be of the highest priority[ ]' " and that "[t]he role of 'private attorneys general' is not uncommon in modern legislative programs." *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 211, 93 S.Ct. 364, 367–68, 34 L.Ed.2d 415 (1972) (citing *J.I. Case Co. v. Borak, supra;* other citations omitted). Thus, the remedial measures undertaken in § 27A are freighted with the public interest, and do not merely deal with private rights.

For these reasons and others forcefully given in *Pacific Mutual* by the Fifth Circuit, I would hold that the "vested rights" arguments of the defendants do not justify invalidating the statute.

## II

Defendants' remaining contention is that § 27A violates the separation of powers doctrine, arguing, *inter alia,* that: (1) the statute has no prospective effect; (2) the statute is not a valid exercise of legislative authority under Article I; and (3) in *Anixter,* 977 F.2d at 1544, this court did not address Article I. Brief for Defendants–Appellees at 33, 35.

In *Anixter,* 977 F.2d at 1544–47, this court held that § 27A does not violate the separation of powers doctrine. It is true that the instant case concerns final and unappealed summary judgments granted on the ground that the claims of plaintiffs were time-barred, while in *Anixter* the judgments had not become final. This, however, does not deprive the forceful reasoning of *Anixter* of meaning here. There was extended analysis of the separation of powers issue and it is instructive. At the outset the *Anixter* court said clearly that it could not "avoid deciding whether the separation of powers doctrine barred Congress from enacting § 27A." 977 F.2d at 1544. It then distinguished *United States v. Klein,* 80 U.S. 128, 20 L.Ed. 519 (1871), noting that § 27A does not "direct courts to make specific factual findings or mandate a result in a particular case." *Anixter,* 977 F.2d at 1545. "Instead, in Section 27A, Congress prescribed a new statute of limitations for the judiciary to apply to all Section 10(b) litigation pending on June 19, 1991." *Id.* We concluded that:

Section 27A does not direct certain factual findings or impose a rule of decision for § 10(b) claims. It changes the law. *Axel Johnson [v. Arthur Andersen & Co.],* 790 F.Supp. [476] at 476 [ (S.D.N.Y.1992) ]. "Section 27A merely turns back the legal clock to the period just prior to *Lampf* and then permits courts independently to adjudicate any reopened actions on the basis of the law as they determine it then existed." *Adler v. Berg Harmon Assocs.,* 790 F.Supp. 1235, 1243 (S.D.N.Y.1991).

Indeed, Section 27A changes the law and was intended to change the law. Before its enactment, all § 10(b) claims were governed by the one-year/three-year *Lampf* statute of limitations as applied retroactively by *Beam.* "Section 27A changed the law by limiting the one-year/three-year rule to prospective application only and by subjecting Section 10(b) claims filed prior to June 19, 1991 to the limitations period determined to be applicable by the court in which the action was filed." *Berg Harmon,* 790 F.Supp. at 1243.

*In enacting Section 27A, Congress exercised a key legislative power.* Statutes of limitations traditionally reside in the legislative branch. "They have come into law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right...." *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945).... *"Legislation to alter such a technical defense, and its application even to dismissed cases, goes far less to the heart of the judicial function than would a legislative attempt to reverse adjudications which had addressed the true merits of the disputes in question."* *Axel Johnson,* 790 F.Supp. at 483.

It is this peculiar realm of legislative prerogative which nullifies defendants' additional contentions of denial of due process and equal protection, propped on the belief our prior dismissal gave them a vested right in a judgment that Congress cannot now annul. ...

\* \* \* \* \* \*

Consequently, we hold § 27A constitutional. Plaintiffs timely moved to reinstate their claims under § 27A(b). We therefore reinstate the verdict with regard to the relief awarded for violations of § 10(b) and Rule 10b–5.

*Anixter,* 977 F.2d at 1545–47 (emphasis added).

Defendants argue that § 27A has no prospective effect at all and that Congress may not enact such a statute. However, such a statute was upheld in *Paramino Lumber Co.,* 309 U.S. at 374–75, 60 S.Ct. at 601. The statute in *Paramino* which operated on the prior injury and award was retrospective, but was held valid against due process objections under the Fifth Amendment. *Id.* at 378, 60 S.Ct. at 602–03. And the Court concluded by rejecting a separation of powers challenge to this retroactive legislation: "Nor can we say that this legislation is an excursion of the Congress into the judicial function." *Id.* at 381, 60 S.Ct. at 604.

What we said in *Anixter* answers sufficiently the notion that we did not deal with Article I powers there. We held that in "enacting Section 27, *Congress exercised a key legislative power. Statutes of limitations traditionally reside in the legislative branch.*" *Anixter,* 977 F.2d at 1546 (emphasis added). The obvious reference is to Article I powers. Moreover, the contention that the statute violates the separation of powers doctrine because it operates only retroactively is unpersuasive. I agree with *Henderson v. Scientific–Atlanta, Inc.,* 971 F.2d 1567, 1573 (11th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993), which rejected that point. "We fail to see the significance of such a distinction [between partial and total retroactivity]. The central issue is whether section 27A violates separation of powers principles by interfering with judicial decision-making. The presence of an additional prospective effect in no way lessens such interference if it exists at all"—which the court held was not the case. *Id.* at 1573.

I feel that *United States v. Sioux Nation of Indians,* 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980), is instructive on the extent of Congressional power in this context. In *Sioux Nation,* there was an earlier determination by the Court of Claims that a 1942 decision operated as res judicata so that a fair dealings claim of the Sioux was barred. In 1978 Congress lifted the res judicata bar and authorized the taking of new evidence. The new Act was upheld against a separation of powers challenge. The Court held that Congress had the power to waive the res judicata bar of the prior judgment; this was a proper Article I exercise of power. *Id.* at 396–97, 100 S.Ct. at 2731–32. Congress did not attempt to award judgment, grant a new trial, reverse a decree of the court, nor interfere with the administration of justice. *Id.* at 398, 100 S.Ct. at 2732. Similarly here I feel Congress properly acted within the range of its Article I powers and did not trench upon the judiciary in merely allowing a new day in court on the claims that had been held time barred after *Lampf* came down. *See also Cooke v. Manufactured Homes, Inc.,* 998 F.2d 1256 (4th Cir.1993) (§ 27A does not violate the separation of powers doctrine);

*Berning v. R.G. Edwards & Sons, Inc.,* 990 F.2d 272 (7th Cir.1993) (same); *Gray v. First Winthrop Corp.,* 989 F.2d 1564 (9th Cir.1993) (same).

In sum, I am unconvinced that the separation of powers or "vested rights" challenges to § 27A overcome the statute's presumption of constitutionality. We should uphold it. Accordingly, I respectfully dissent.